# Exhibit A

## RESPONSE TO ZURICH'S APPENDIX A – STATEMENT OF GENUINE DISPUTES

Pursuant to N.D. Ind. L. R. 56-1(b)(2), Landis+Gyr Inc. ("Landis") submits the following response to Zurich American Insurance Company's ("Zurich") Statement of Genuine Disputes (Dkt. 71-1.)

**I.      Zurich's Statute of Limitations Defense**

4.      Landis's complaint alleges that Zurich wrongfully denied insurance coverage for the environmental contamination at 3601 Sagamore Parkway, Lafayette, Indiana ("Sagamore Site"). (Dkt. 1, ¶ 2.)

**Response: Yes it does.  However, this does not create a genuine issue of material fact prohibiting summary judgment for Landis because Zurich has not shown when it denied coverage, and it failed to defend and indemnify Landis throughout the pendency of the underlying liability matter, which was not resolved with all regulators until 2017.**

5.      Landis has presented no evidence establishing that Zurich denied coverage within the applicable statute of limitations.

**Response:  Landis is not obligated to prove facts that are necessary to support Zurich's affirmative defenses.  In addition, this does not create a genuine issue of material fact because the statute of limitations for a liability coverage claim cannot begin to run prior to the resolution of the underlying liability claim, which did not occur until 2017. Even as Zurich would have it, the limitations period could not begin to run prior to the denial of coverage, and Zurich has not produced any evidence of when it denied coverage.**

6.      Landis has not borne its burden of proving that there is no genuine issue of material fact as to Zurich's statute of limitations defense.

1

**Response:**   This is an affirmative defense Zurich is asserting, so Zurich bears the burden of proving this defense, not Landis.  In any event, there is no genuine issue of material fact as to the statute of limitations because the limitations period in a case of liability coverage does not begin to run until the underlying liability case is resolved, and there is a cause of action.  Here, the underlying liability matter was not resolved until 2017.  In addition, as noted above, Zurich has not produced any evidence of the date as to when it denied coverage.  See also *supra,* Responses to Nos. 4 & 5.

II.     **Notice, Pretender Defense Costs and Voluntary Payments Defenses**

7.     Landis claims that it notified Zurich of the Sagamore Site at some unspecified point prior to mid-1995. (Dkt. 55-2, 17; Dkt. 55-5, 5.)

**Response:**     Agreed, but there is no related genuine issue of material fact.  Zurich has not submitted any admissible contrary evidence creating a dispute of fact.

8.     As Zurich explains in its brief, these vague and conclusory affidavits are insufficient to bear Landis's initial burden of establishing that there is no genuine issue of material fact as to notice.

**Response:**     The affidavits Landis submitted establishing that it notified Zurich of the Sagamore Site are competent and admissible evidence, and Zurich has not presented any admissible evidence to the contrary.  Thus, there is no genuine issue of material fact.

9 (a) through (c).     Moreover, Zurich's evidence establishes that notice was not given until September 16, 2014 (*see* Hairrell Aff., ¶¶ 5, 7, 8, 10, 11, 13 and 14; Hairrell Aff., Ex. 9)

**Response:**     The Hairrell Aff. Para. 5, 7, 8, 10, 11, 13 and 14 are not based on personal knowledge, lack foundation and are speculative and thus are inadmissible.  Further, the statements in Para. 5, 7, 8, 10, 11, 13 and 14 contradict Zurich's own

documents, policies, practices and procedures.  Therefore, the Hairrell Affidavit cannot create a genuine issue of material fact.

10.     Questions of fact also exist as to the prejudice resulting from Landis's late notice.

a.     Landis has not presented any evidence establishing a lack of prejudice resulting from its more than 30-year delay in delivering notice, thus failing to rebut the presumption of prejudice created by its late notice. (Dkt. 54 at 14-15; Dkt. 55-1.)

b.     Without citing any evidence in support, Landis contends that Zurich suffered no prejudice because it diligently investigated and cleaned up the pollution at the Sagamore Site.

c.     Zurich has presented evidence that it was prejudiced because, had Landis given it timely notice, Zurich could have mitigated the length and cost of environmental investigation and remediation. (Alvey Aff., ¶¶ 13-14.)

d.     Zurich has presented evidence that Landis's investigation and remediation effort was not diligent. (Alvey Aff., ¶ 15.)

**Response**:     **Zurich has not pointed to admissible facts that create a genuine issue of material fact on prejudice. First, to the extent the Court agrees that Landis has established it provided timely notice before 1995, prejudice is irrelevant.**

**Second, to create a genuine issue of material fact Zurich must point to evidence that it would have taken different steps or achieved different results in order to show prejudice.** *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, **433 F. Supp. 2d 933, 953 (N.D. Ind. 2005).  Zurich has presented no such admissible evidence, nor does any exist, to suggest that it would have handled the RCRA action at the Site any differently or obtained a materially different result.  Zurich relies solely on Para. 13-15 of the Affidavit of its expert, Peter Alvey.  But Mr. Alvey's testimony of generally what "could have been done" and**

3

what may have been "likely" are insufficient to carry Zurich's burden of establishing a genuine issue of material fact on prejudice. *Wolf Lake Terminals*, 433 F. Supp. 2d at 953 (N.D. Ind. 2005) ("general statements of actions made possible by early detection do not satisfy [the insurer's] obligation to show that those steps in fact would have been taken or would have achieved different results"). This is particularly true when, like in this case, the insurer did nothing in response to the notice that it received in September 2014. *Id*.

11.     The timing of Landis's notice and any resulting prejudice are material to Zurich's late-notice affirmative defense and its pre-tender costs affirmative defense.

**Response**:     **See Response to No. 10.**

12.     The timing of Landis's notice and any resulting prejudice are also material to Zurich's proposed voluntary payments defense because any agreements or settlement entered into before Landis notified Zurich of the contamination at the Sagamore Site could not have been entered into with Zurich's consent.

**Response:**     **See Response to No. 10.  Also, there is no genuine issue of material fact as to "voluntary payments" defense in this case because like most jurisdictions, under Indiana law, costs incurred in response to demands by environmental authorities including IDEM and EPA are not considered to be "voluntary" at all – thus the voluntary payments condition is entirely inapplicable.** *Governmental Interinsurance Exch. v. City of Angola, Ind.*, **8 F.Supp.2d 1120, 1133-35 (N.D. Ind. 1998).  Moreover, the costs at issue were incurred after notice was given.**

**III.     Personal Injury Coverage**

4

13.     Landis contends that the personal injury coverage of the relevant insurance policies is triggered because the contamination at the Sagamore Site affected third parties' property. (Dkt. 54 at 11-12.)  Landis cites no evidence to support this contention. (*Id.*)

**Response:        This does not create a genuine issue of material fact because there is no dispute that Landis's claim triggered the property damage coverage part; there is no need to analyze this alternative basis for coverage.**

14.     Zurich has presented evidence that the exhibits Landis relies on in support of its motion for partial summary judgment do not show that the contamination at the Sagamore Site affected the property of any third parties. (Alvey Aff., ¶ 16.)

**Response:        This does not create a genuine issue of material fact because there is no dispute that Landis's claim triggered the property damage coverage part; there is no need to analyze this alternative basis for coverage.**

15.     The question of whether the contamination affected the property of third parties is material to the application of the policies' personal injury coverage.

**Response:        This does not create a genuine issue of material fact because there is no dispute that Landis's claim triggered the property damage coverage part; there is no need to analyze this alternative basis for coverage.**

16.     Landis has not borne its initial burden of proving that there is no genuine issue of material fact as to the application of the policies' personal injury coverage.

**Response:        This does not create a genuine issue of material fact because there is no dispute that Landis's claim triggered the property damage coverage part; there is no need to analyze this alternative basis for coverage.**

**IV.** **Whether Landis's Agreement and Settlement with the Environmental Authorities Were Voluntarily Entered for Purposes of Zurich's Proposed Voluntary Payments Defense**

17.     Landis has not presented any evidence explaining the circumstances under which it agreed to investigate and remediate the Sagamore Site.

**Response:     This does not create a genuine issue of material fact because there is no dispute that Landis undertook the investigation and remediation at issue at the direction of IDEM and, like most jurisdictions, under Indiana law, costs incurred in response to demands by environmental authorities including IDEM and EPA are not considered to be "voluntary" at all – thus the voluntary payments condition is entirely inapplicable.** *Governmental Interinsurance Exch.,* **8 F.Supp.2d at 1133-35.  In addition, Landis was facing a second RCRA closure action when it entered into the Indiana VRP in 1998.  Again, notice was given to Zurich before these steps were taken.**

18.     Zurich has presented evidence that Landis's investigation and remediation of the Sagamore Site was not compelled by the authorities, but was instead the product of several voluntary agreements and settlements with the Indiana Department of Environmental Management ("IDEM"). (Alvey Aff., ¶¶ 9-10, 12.)

**Response:     To the contrary, the evidence shows Landis' steps to investigate and remediate the site were taken in response to a RCRA closure action and following notice to Zurich.  In any event, even if Zurich were correct, this does not create a genuine issue of material fact because like most jurisdictions, under Indiana law, costs incurred in response to demands by environmental authorities including IDEM and EPA are not considered to be "voluntary" at all – thus the voluntary payments condition is entirely inapplicable.** *Governmental Interinsurance Exch.,* **8 F.Supp.2d at  1133-35.**

6

19.     The question of whether IDEM compelled Landis to investigate and remediate the Sagamore Site is material to Zurich's proposed voluntary-payments affirmative defense.

**Response:**     **Again, Zurich is mistaken.  *See supra*, response to no. 18.  In addition, this does not create a genuine issue of material fact because like most jurisdictions, under Indiana law, costs incurred in response to demands by environmental authorities including IDEM and EPA are not considered to be "voluntary" at all – thus the voluntary payments condition is entirely inapplicable.  *Governmental Interinsurance Exch.*, 8 F.Supp.2d at 1133-35.**

## V.     When Landis First Learned of the Environmental Contamination for Purposes of Zurich's Proposed Known-Loss Defense

20.     Landis acknowledges that the operation polluting the surface impoundment at the Sagamore Site began in 1953 and that operation discharging solvents below its facility began in 1973. (Dkt. 55-1 at 3; Dkt. 55-3 at 7, 8-19.)

**Response:**     **Zurich has misstated and confused the evidence.  In any event, these dates of operation do not create a genuine issue of material fact because Landis did not know in 1953 or 1973 that there were known liabilities from its operations.  Further, a loss for purposes of the known loss doctrine is not the underlying injury, but instead, the *liability* for that underlying injury. *General Housewares Corp. v. Nat'l Sur. Corp.*, 741 N.E.2d 408, 416 (Ind. Ct. App. 2000); *Thomson, Inc. v. XL Ins. Am., Inc*., 22 N.E.3d 809 (Ind. Ct. App. 2014) (holding that the known loss doctrine was not implicated where policyholder was unaware of its liability for contamination prior to purchasing the policies, even though it was aware of the contamination itself) ("The trial court, in finding that the**

7

**known loss doctrine barred coverage, confused the environmental contamination of the Taiwan Plant with the legal liability to remediate it.")**

21.     Landis acknowledges that it began its investigation of the Sagamore Site in 1984. (Dkt. 54 at 3.)

**<u>Response:</u>       This does not create a genuine issue of material fact because the costs for which coverage is sought were not incurred until after 1995.  In addition, Zurich has confused the closure of the surface impoundment, which began in 1984, with the investigation of TCE releases from degreasing operations, which occurred later.  Further, a loss for purposes of the known loss doctrine is not the underlying injury, but instead, the *liability* for that underlying injury. *General Housewares,* 741 N.E.2d at 416; *Thomson,* 22 N.E.3d at 809 (holding that the known loss doctrine was not implicated where policyholder was unaware of its liability for contamination prior to purchasing the policies, even though it was aware of the contamination itself) ("The trial court, in finding that the known loss doctrine barred coverage, confused the environmental contamination of the Taiwan Plant with the legal liability to remediate it.")**

22.     Zurich has presented evidence establishing that Landis knew of environmental contamination at the Sagamore Site at least as early as 1983. (Ex. 1 to Wright Aff.)

**<u>Response:</u>       This exhibit to Mr. Wright's affidavit does not establish knowledge of a liability, or even a discovery of any actionable contamination.  Landis used hazardous materials and substances in its operations on a daily basis, which Zurich knew as well.  In fact, Landis was supposed to discharge contaminants into its surface impoundment unit. Indeed, that is why this unit existed.  Further, a loss for purposes of the known loss doctrine is not the underlying injury, but instead, the *liability* for that underlying injury.**

8

*General Housewares,* **741 N.E.2d at 416;** *Thomson,* **22 N.E.3d at 809 (holding that the known loss doctrine was not implicated where policyholder was unaware of its liability for contamination prior to purchasing the policies, even though it was aware of the contamination itself) ("The trial court, in finding that the known loss doctrine barred coverage, confused the environmental contamination of the Taiwan Plant with the legal liability to remediate it.")**

23.     Zurich has presented evidence establishing that Landis knew of trichloroethylene ("TCE") at the Sagamore Site at least as early as 1987. (Ex. 12 to Wright Aff.)

**<u>Response:</u>       Of course Landis "knew" of TCE at this Site as early as 1987.  Landis had been using TCE and other contaminants in its operation for years.  This "evidence" shows and proves nothing.  Moreover, even as Zurich would have it, if such evidence were considered knowledge of a liability, this "known loss" would only affect policies issued after 1987.** *Wolf Lake Terminals,* **433 F.Supp.2d at 933 (holding that the known loss doctrine was not implicated for policies purchased before the loss).**

**Second, a loss for purposes of the known loss doctrine is not the underlying injury, but instead, the** *liability* **for that underlying injury.** *General Housewares,* **741 N.E.2d at 416;** *Thomson,* **22 N.E.3d at 809 (holding that the known loss doctrine was not implicated where policyholder was unaware of its liability for contamination prior to purchasing the policies, even though it was aware of the contamination itself) ("The trial court, in finding that the known loss doctrine barred coverage, confused the environmental contamination of the Taiwan Plant with the legal liability to remediate it.")  On its face, the 1987 document relied upon by Zurich does not constitute an allegation or notice of liability, does not demand an investigation, remediation or any action.  Thus, there is no basis for saying**

9

Landis had knowledge of liability for TCE contamination at that point in time. *Merdian Mut. Ins. Co. v. Majestic Block & Supply, Inc.*, 1 N.E.3d 173 (Ind. Ct. App. 2013) (holding that the known loss doctrine was not implicated by laboratory results from a soil sample after the policy commenced and where, even if preliminary results indicated contamination, it was not significant enough to warrant an IDEM investigation until 2006).

24.    The insurance policies at issue in this case were in effect from October 1, 1977 to October 1, 1988. (Dkt. 1, ¶ 12.)

**Response:    Agreed.**

25.    Questions of fact remain regarding when Landis first knew of the contamination at the Sagamore Site.

**Response:      No, they do not.  Zurich has not pointed to any facts giving rise to a triable question of fact as to whether Landis was aware of a <u>liability</u> claim prior to the time it purchased the Zurich policies.  A loss for purposes of the known loss doctrine is not the underlying injury, but instead, the *liability* for that underlying injury. *General Housewares,* 741 N.E.2d at 416; *Thomson,* 22 N.E.3d at 809 (holding that the known loss doctrine was not implicated where policyholder was unaware of its liability for contamination prior to purchasing the policies, even though it was aware of the contamination itself) ("The trial court, in finding that the known loss doctrine barred coverage, confused the environmental contamination of the Taiwan Plant with the legal liability to remediate it.")  Consequently, Zurich has failed to "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir. 1987), *cert. denied,* 484 U.S. 977 (1987).**

CO\5803597.3

26.     The question of when Landis first knew of contamination at the Sagamore Site, or when Landis knew that such contamination was substantially certain to occur, is material for Zurich's proposed known-loss defense.

**Response:       No, it isn't.  Zurich has not pointed to any facts giving rise to a triable question of fact as to whether Landis was aware of a <u>liability</u> claim prior to the time it purchased the Zurich policies.  A loss for purposes of the known loss doctrine is not the underlying injury, but instead, the *liability* for that underlying injury. *General Housewares,* 741 N.E.2d at 416; *Thomson,* 22 N.E.3d at 809 (holding that the known loss doctrine was not implicated where policyholder was unaware of its liability for contamination prior to purchasing the policies, even though it was aware of the contamination itself) ("The trial court, in finding that the known loss doctrine barred coverage, confused the environmental contamination of the Taiwan Plant with the legal liability to remediate it.")  Consequently, Zurich has failed to "affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC,* 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir. 1987), *cert. denied,* 484 U.S. 977 (1987).**

11