UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| LANDIS+GYR INC., a Delaware Corporation, f/k/a LANDIS & GYR METERING, INC.,, <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, f/k/a ZURICH INSURANCE COMPANY, , <br><br> Defendant. | Case No. 4:16-CV-00082-JTM-APR |

## ZURICH'S OPPOSITION TO LANDIS+GYR'S MOTION TO STRIKE CERTAIN INADMISSIBLE TESTIMONY CITED BY ZURICH

Defendant, Zurich American Insurance Company, f/k/a Zurich Insurance Company ("Zurich"), by its counsel, Hinshaw & Culbertson LLP, responds as follows in opposition to Landis+Gyr's ("Landis") Motion to Strike Certain Inadmissible Testimony Cited by Zurich ("Motion") (Dkt. 84) and brief in support of the Motion (Dkt. 86):

### Introduction

Landis's Motion is premised on a fundamental misapprehension of the rules relating to corporate designees under Federal Rule of Civil Procedure 30(b)(6) and expert witnesses. Landis's Motion asks that this Court strike certain paragraphs of two affidavits cited in support of Zurich's Response in Opposition to Landis's Motion for Partial Summary Judgment (Dkt. 71): (1) the affidavit of Cherish Hairrell, which relates to Landis's failure to give Zurich timely notice of its claim (Dkt. 71-3); and (2) the affidavit of Peter Alvey, which relates to the prejudice Zurich suffered as a result of Landis's failure to give timely notice (Dkt. 71-5).

Landis contends that Ms. Hairrell's affidavit testimony about Zurich's historic procedures for receiving notice of claims lacks personal knowledge and is based on hearsay, wholly ignoring

the fact that Ms. Hairrell is Zurich's Rule 30(b)(6) designee, who is entitled to "testify about information known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). In her capacity as a Rule 30(b)(6) designee, Ms. Hairrell was *required* to educate herself about Zurich's position on the topics identified in Landis's notice—including topics related to how Zurich historically received notice of claims—even if Ms. Hairrell did not have direct personal knowledge of the topics. As such, Ms. Hairrell's affidavit testimony about these same matters is also admissible. If companies like Zurich were required to provide testimony from witnesses with personal knowledge of matters that occurred many decades ago, it may never be able to defend itself against lawsuits such as this one, in which Landis mistakenly contends that it provided Zurich with notice of a claim more than twenty years ago.

Similarly, Landis claims that Mr. Alvey's affidavit lacks sufficient information regarding his qualifications to serve as an expert, ignoring Mr. Alvey's extensive qualifications and past experience—all of which are recounted in his affidavit—in both environmental remediation and cost consulting. This Court should deny Landis's baseless Motion.

## Argument

### I.  MS. HAIRRELL'S AFFIDAVIT IS BASED ON HER PERSONAL KNOWLEDGE OF ZURICH'S CLAIMS SYSTEMS AND PROCEDURES, WHICH SHE MAY TESTIFY TO AS ZURICH'S 30(b)(6) DESIGNEE

Ms. Hairrell is Zurich's Rule 30(b)(6) witness in this case. As part of the process of educating herself for her deposition, she learned information regarding Zurich's claims handling and records retention procedures so that she could answer questions on topics which *Landis designated as part of its Rule 30(b)(6) notice*:

> 6.  The handling of the Claim and any claims files concerning Landis . . ., the Claim and the Site.

* * *

  11. Zurich's document retention policies.

* * *

  18. Storage methods and methods for locating policies and claims, including any computerized methods of storage.

  19. Any computer system, or data or document management system, that has or may contain information about Landis . . ., the Policies, the Claim and/or the Site.

(Amended Notice of Videotaped Rule 30(b)(6) Deposition to Zurich Insurance Company, attached as Exhibit A.)

  Now, Landis speciously claims that Ms. Hairrell's testimony recounting information she learned from that educational process is inadmissible because it is not based on her personal knowledge. Landis's Motion is the height of hypocrisy: it sought Zurich's Rule 30(b)(6) deposition in order to discover evidence helpful to its case, but now seeks to exclude any testimony on those topics that is detrimental to its case.

  Under Rule 30(b)(6), a party may seek to depose a corporate designee "about information known or reasonably available *to the organization*." Fed. R. Civ. P. 30(b)(6) (emphasis added). The witness designated as a corporate representative under Rule 30(b)(6) must educate herself as to the topics designated for the deposition. *See Seaga Mfg. v. Intermatic Mfg.*, No. 13 C 50041, 2013 U.S. Dist. LEXIS 97903, at *5 (N.D. Ill. July 12, 2013) (under Rule 30(b)(6) "the corporation has a duty to make a good faith, conscientious effort to designate appropriate persons and to prepare them to testify fully and non-evasively about the subjects"). "A 30(b)(6) designee is authorized to testify not only to matters within his personal knowledge but also to matters known or reasonably available to the organization. Thus, [a Rule 30(b)(6) designee is] free to testify to matters outside his personal knowledge as long as they were within the corporate

rubric." *Timm v. Goodyear Dunlop Tires N. Am.*, No. 2:14-CV-232-PPS-JEM, 2016 U.S. Dist. LEXIS 89063, at *7 (N.D. Ind. July 8, 2016).

Courts have recognized that a Rule 30(b)(6) witness may present an affidavit in support of a motion for summary judgment, even if it is outside the witness's personal knowledge, so long as the affidavit recounts information within the scope of Rule 30(b)(6). *See*, *e.g.*, *Univ. Healthsystem Consortium v. UnitedHealth Group, Inc.*, 68 F. Supp. 3d 917, 921 (N.D. Ill. 2014) ("[A] Rule 30(b)(6) witness may testify both in a deposition and at trial to matters as to which she lacks personal knowledge . . . . The Court discerns little principled distinction between allowing a Rule 30(b)(6) witness to testify at trial without personal knowledge and allowing him to testify via affidavit at the summary judgment stage without personal knowledge . . . ."); *Weinstein v. Dist. of Columbia Housing Auth.*, 931 F. Supp. 178, 186-87 (D.D.C. 2013) (collecting cases).

Because Ms. Hairrell is Zurich's Rule 30(b)(6) designee, she may testify to matters outside her personal knowledge, so long as they are within the knowledge of Zurich. Each of the paragraphs to which Landis objects relates information that Zurich would know, including information on when Landis gave Zurich notice, Zurich's document retention policies, and Zurich's electronic claims management system, eZACCESS. (Dkt. 71-3, ¶¶ 5, 7, 8, 10, 11, 13, 14.) The fact that Ms. Hairrell herself may not have been aware of this information before this case does not mean that Zurich cannot use her statements in opposition to Landis's motion for partial summary judgment.

Landis's hearsay objections are similarly hollow. Landis claims that, because Ms. Hairrell spoke to other Zurich employees regarding its physical and electronic document retention policies, her affidavit recounting those policies is hearsay. Again, Landis fails to

4

explain how a Rule 30(b)(6) witness should be expected to educate herself on a large corporation's knowledge without asking other employees of the corporation about the corporation's policies and procedures. *See*, *e.g.*, *Sara Lee Corp. v. Kraft Foods, Inc.*, 276 F.R.D. 500, 501, 503 (N.D. Ill. 2011) (rejecting hearsay challenge to affidavit of Rule 30(b)(6) witness and stating that witness could testify as to topics "such as corporate policies and procedures"); *Societe Generale Energie Corp. v. N.Y. Marine Gen. Ins. Co.*, 368 F. Supp. 2d 296, 299 (S.D.N.Y. 2005) (rejecting hearsay argument at summary judgment where the "[t]he testimony was given by a Fed. R. Civ. P. 30(b)(6) witness who testified to the defendant organization's knowledge").

Landis relies on two wildly off-point cases to support its Motion. The first, *Visser v. Packer Engineering Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991), involved affidavits by employees of a company in which the employees speculated that the head of the company fired the plaintiff because of his age. The court dismissed those affidavits as "amateur psychoanalysis," as the witnesses could not testify as to their employer's state of mind. *Id.*

The second, *Hayes v. Menard, Inc.*, No. 4:11-cv-00043, 2012 U.S. Dist. LEXIS 177126, at *(N.D. Ind. Dec. 14, 2012), involved a store manager's affidavit attesting to when other employees of his store noticed a spill on the floor of a Menard's hardware store. The court struck the store manager's statements regarding when all of his employees first saw the spill because those statements involved "speculation concerning the knowledge of other persons, because [the manager] was not the only employee on duty prior to the incident." *Id.* at *6.

Critically, neither *Visser* nor *Hayes* involved affidavit testimony from a Rule 30(b)(6) witness as to a corporation's internal policies or systems. Ms. Hairrell did not testify as to another individual's state of mind or personal observations like the affiants in *Visser* or *Hayes*.

5

Instead, she attested to matters relating to Zurich's corporate knowledge—specifically, if and when Zurich received notice of the Sagamore Parkway site ("Sagamore Site") pollution claim—which she was *required to know* as Zurich's Rule 30(b)(6) designee.

Because Ms. Hairrell has been designated as Zurich's Rule 30(b)(6) witness, she may testify as to matters known to Zurich, even if she did not have personal knowledge of those matters before this case. Fed. R. Civ. P. 30(b)(6). This Court should reject Landis's attempt to strike evidence that it actively sought out in discovery.

Landis also claims that Ms. Hairrell's affidavit lacks personal knowledge regarding the records because she did not speak with anyone employed in the 1980s. (Dkt. 86, pp. 5-6.) First of all, Landis claims that it gave notice to Zurich in the mid *1990s*. (Dkt. 55-2, ¶ 7; Dkt. 55-5, ¶ 5.) The fact that individuals were not employed with Zurich in the 1980s is wholly irrelevant to Landis's assertion that it gave notice to Zurich a decade later. Landis cites no evidence showing that the individuals with whom Ms. Hairrell spoke were not employed with Zurich at the time Landis gave notice in the mid-1990s.

More importantly, the time that these employees were first hired is irrelevant. Landis fails to appreciate that, regardless of whether the individuals with whom Ms. Hairrell spoke were employed with Zurich before 1986, they would still have knowledge of the *temporal scope of the systems they manage*. For example, Joel Robinette, Zurich's physical records retention manager, would know how old the physical records in his charge are. In fact, Ms. Hairrell testified that Mr. Robinette "understands . . . the history of how Zurich handled the retention." (Deposition of C. Hairrell, attached as Exhibit B, at 157:20-157:22.) Likewise, Zurich's information technology ("IT") department would know the timeframe of claims included in eZACCESS. (Ex. B 246:9-246:11, 246:24-247:1.) Not every individual at Zurich would have to be employed in 1986 to

6

know that certain records systems include pre-1986 information; they would simply have to be aware of how those systems operated.

Landis also attempts to cast doubt on the veracity of Ms. Hairrell's preparation as a Rule 30(b)(6) witness by noting that she had trouble remembering the names of the individuals she spoke with in Zurich's records department and IT department. (Dkt. 86, pp. 5-6.) It cites no authority for the proposition that Ms. Hairrell's inability to recall the last name of every individual she spoke with disqualifies her testimony. Moreover, as a 30(b)(6) representative, Ms. Hairrell had to educate herself about the Zurich's position on 19 different topics identified by Landis's notice, including topics such as Zurich's "[s]torage methods and methods for locating policies and claims, including any computerized methods of storage," which are complex and span more than 30 years of the company's history. In context, Ms. Hairrell's inability to recall, for instance, the last name of one person she met with is completely immaterial, and Landis's repeated emphasis of this point is a meaningless distraction. If Landis needed to learn the last name of the individual referenced during Ms. Hairrell's deposition, it could have easily inquired with Zurich's counsel at any point after the deposition, but no such inquiry was ever made.

Even if Ms. Hairrell was not a Rule 30(b)(6) witness, five of the seven paragraphs to which Landis objects relate to matters within her personal knowledge. Paragraphs 7, 8, 10, and 14 all relate to eZACCESS, Zurich's claims database. (Dkt. 71-3.) Ms. Hairrell attested that she has been employed with Zurich for over 15 years and has personally learned how Zurich maintains its claims files. (Dkt. 71-3, ¶¶ 2, 4.) Her personal knowledge of eZACCESS may be inferred from her extensive experience in handling claims with Zurich. *See Credentials Plus, LLC v. Calderone*, 230 F. Supp. 2d 890, 904 (N.D. Ind. 2002) (noting that personal knowledge of affiant "may be inferred from the contents of an affidavit as a whole rather than from an explicit

assertion that the affiant has personal knowledge for each statement in an affidavit"); *Mayne v. Ft. Wayne Cardiology*, No. 1:06-cv-288, 2007 U.S. Dist. LEXIS 81704, at *7 (N.D. Ind. Nov. 2, 2007) ("[c]ommon sense dictates that if an affiant is an employee of a company, she has personal knowledge of events and circumstances that occurred at the company within her sphere of observation") (internal quotation marks omitted).

Moreover, at her deposition, Ms. Hairrell testified that, as an environmental claims specialist, she uses eZACCESS. (Ex. B, at 18:19-18:23, 65:7-66:2.) She also testified regarding the information that is included in that system:

> The information relating to the claim, which would be the claim number, the insured name, policy number. There's like a summary of the loss, the loss location, the basic details of the claim, and then the [claim] handler would update with correspondence and documents.

(*Id.* at 107:13-107:18.) Thus, paragraphs 7, 8, 10, and 14 reflect Ms. Hairrell's personal familiarity with eZACCESS.

Likewise, paragraph 13 of her affidavit recounts the search for Landis's alleged claim file by employees under her supervision and the location of an unrelated claim file relating to Landis's environmental liability at the Lakeland Disposal Services site (the "Lakeland Site"). (Dkt. 71-3, ¶ 13.) She possessed personal knowledge of this investigation and of the Lakeland Site claim file because she supervised the individuals who found it. And at her deposition, Ms. Hairrell identified correspondence she had with one of the individuals she supervised concerning the Lakeland Site file. (Ex. B, 106:13-107:2 and Ex. 15 attached thereto.) Thus, Ms. Hairrell has personal knowledge of the results of the search for the Lakeland Site claim file.

Landis also attempts to create a conflict between paragraph 13 of Ms. Hairrell's affidavit and her deposition testimony by claiming that her deposition showed the inaccuracy of Ms. Hairrell's assertion that "[n]one of the correspondence in the Lakeland Site claim file referred to

8

environmental contamination or remediation at the Sagamore Site." (Dkt. 71-3, ¶ 13; Dkt. 86, pp. 8-9.) Tellingly, Landis cites no *deposition testimony* in which Ms. Hairrell contradicted paragraph 13. Instead, Landis attempts to draw a series of inferences from oblique references to "claims" and vague "other sites" in *exhibits* presented to Ms. Hairrell at her deposition, none of which actually refer to the Sagamore Site at issue. (Dkt. 86, p. 9.) In order to invoke the rule that a witness's affidavit contradicting his or her deposition must be stricken, "the party objecting to the affidavit must show a *direct and specific conflict* between the affidavit and the *deposition testimony* . . . ." *Miller v. Heritage Prods. Inc.*, No. 1:02-cv-1345-DFH, 2004 U.S. Dist. LEXIS 8531, at *5 (S.D. Ind. Apr. 21, 2004) (emphases added); *see also Bamcor LLC v. Jupiter Aluminum Corp.*, 767 F. Supp. 2d 959, 979 (N.D. Ind. 2011) (denying motion to strike based on alleged conflict between deposition and affidavit where the witness's "deposition testimony [was] susceptible to more than one interpretation"). Any conflict between documentary evidence and Ms. Hairrell's affidavit is irrelevant.

And in any event, these alleged "contradictions" are anything but. The same November 30, 1987 reservation of rights letter that Landis cites as evidence of a conflict was attached to Ms. Hairrell's affidavit. (Dkt. 71-3, pp. 105-08.) Nowhere in that letter is there any mention of the Sagamore Site. (*Id.*) In fact, the letter's caption reads, "CLAIMANT: ESEPA (*LAKELAND DISPOSAL SITE*)." (*Id.* at 105) (emphasis added.) Contrary to Landis's claim, the fact that the letter uses the plural, "claims," is of no moment, as the letter plainly refers to "the *above-captioned claims*," *i.e.*, the Lakeland Site. (*Id.*)

Similarly, Landis attempts to claim that the 1987 reservation of rights conflicts with Ms. Hairrell's affidavit because the reservation of rights invokes the owned property exclusion, and Landis did not own the Lakeland Site. (Dkt. 86, p. 9.) But the reservation of rights letter does not

9

say that the owned property exclusion applies. Rather, it states, "*If and to the extent* the above-captioned claims seek recovery for property damage to property owned, occupied, rented or used by . . . Landis . . . such damages are excluded from coverage by [the owned property exclusion]." (Dkt. 71-3, p. 108) (emphasis added.) And the evidence that Landis submitted relating to the Lakeland Site—an EPA request for information and Landis's response—did not indicate one way or the other if Landis owned the Lakeland Site. (Dkt. 71-3, pp. 15-32.) Plainly, Zurich reserved its right to assert the owned property exclusion, without asserting that the owned property exclusion actually applied, as Landis's ownership was unclear. Thus, there is no conflict between the 1987 reservation of rights and Ms. Hairrell's affidavit.

The same is true for the alleged conflict between paragraph 13 and the October 3, 2016 email from claims adjuster Julie York. (Dkt. 86, p. 9.) Again, this is not a conflict between deposition *testimony* and Ms. Hairrell's affidavit. Thus, it is irrelevant to the admissibility of Ms. Hairrell's testimony. Moreover, the email states that Landis gave notice in 1987 of the Lakeland Site and "*possibly* other sites." (*Id.*) (emphasis added) The fact that Landis *possibly* gave notice of other, unspecified pollution claims fails to establish any direct conflict with paragraph 13 of Ms. Hairrell's affidavit.

Finally, Landis claims that Ms. Hairrell's assertions regarding Zurich's records retention conflict with Zurich's written records retention policies. (Dkt. 86, pp. 10-12.) First of all, no such conflict exists. Ms. Hairrell testified that, while Zurich's records retention policies provide that Zurich could destroy claims files after a certain amount of time, Zurich never actually destroyed any claims files according to this policy. (Ex. B, 93:23-94:1.) Landis cites nothing in those policies that *required* Zurich to dispose of records within any amount of time. (Dkt. 86, pp. 11-

301461149v1 1004168

12.) The fact that destruction was *authorized* does not show that it actually occurred, and Ms. Hairrell appropriately testified that Zurich never undertook any destruction of claim files.

Second, any minor contradictions between the Zurich document retention policies and Ms. Hairrell's Rule 30(b)(6) testimony would simply go to its weight, not its admissibility. *See Flanagan v. Allstate Ins. Co.*, No. 01 C 1541, 2008 U.S. Dist. LEXIS 89744, at *6 (N.D. Ill. May 21, 2008) ("The fact that the parties offer conflicting testimony on this point does not mean that plaintiffs' proffered testimony is not a sufficient foundation for the documents. Whether the documents were actually used by senior management is a question that goes to weight of the evidence rather than admissibility."); *Harleysville Lake States Ins. Co. v. Hostetler*, No. 3:04-CV-306RM, 2006 U.S. Dist. LEXIS 10580, at *6 (N.D. Ind. Feb. 13, 2006) (conflicts between affidavit and other evidence "goes to the weight of the statement, not its admissibility"). Thus, this Court should reject Landis's motion to strike paragraphs 5, 7, 8, 10, 11, 13, and 14 of Ms. Hairrell's affidavit.

## II.  MR. ALVEY'S AFFIDAVIT AMPLY RECITES HIS QUALIFICATIONS TO SERVE AS AN EXPERT WITNESS AND THE REASONS FOR HIS OPINIONS

Landis also objects to paragraphs 13 through 15 of the affidavit of Peter Alvey, arguing that Mr. Alvey failed to cite sufficient scientific methods or principles underlying his opinion that Landis's late notice prejudiced Zurich. (Dkt. 86, pp. 14-16.) Landis's argument demonstrates its fundamental misunderstanding of the Federal Rules of Evidence and the necessary foundation for expert witness testimony. This Court should reject it.

Courts apply a two-part test to the admissibility of expert testimony. *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d 933, 943 (N.D. Ind. 2005). First, the court determines whether the expert has sufficient qualifications. *Id.* Second, the court considers the reliability of the expert's methodology. *Id.* The application of these two parts is "flexible . . .

and no single factor . . . is dispositive." *Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 870 (7th Cir. 2001). Nor are these standards "extremely rigid." *Id.* at 867. This court has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Mr. Alvey plainly possesses the necessary qualifications to testify as an expert on the reasonableness of Landis's remediation efforts. He attested that he has over thirty years' experience in environmental assessment, remediation, and risk management, as well as over twenty years' experience in environmental dispute investigation and management, including cost containment, liability assessment, settlement negotiations, and expert witness services. (Dkt. 71-5, ¶¶ 3-4.) He attached a professional profile, showing that he has served as an environmental cost consultant in numerous insurance and environmental disputes, and has overseen many environmental investigations and remediations. (Dkt. 71-5, pp. 8-12.) Mr. Alvey certainly possesses the expertise necessary to opine as to the reasonableness of Landis's investigation and remediation, as well as what steps Zurich could have taken had it been provided notice earlier. *See*, *e.g.*, *Fisher v. Ciba Specialty Chemicals Corp.*, No. 03-0566-WS-B, 2007 U.S. Dist. LEXIS 58392, at *49 (expert was "obviously qualified to provide . . . opinions in the field of environmental risk assessment" where he had degrees in environmental engineering, had 15 years of experience as a consulting environmental engineer, and had performed numerous quantitative risk assessments); *U.S. v. Apex Oil Co.*, No. 05-CV-242-DRH, 2007 U.S. Dist. LEXIS 18143, at *7 (N.D. Ill. Mar. 15, 2007) ("The Court . . . finds that Dr. Butler's academic background in environmental chemistry, as well as his experience in forensic chemistry qualify him as an expert in [environmental toxicology].").

Moreover, Landis's objections to Mr. Alvey's methodology are unfounded. For purposes of an affidavit in opposition to a motion for summary judgment, the expert affidavit need only present "'a process of reasoning beginning from a firm foundation.'" *Med. Assur. Co. v. Miller*, 779 F. Supp. 2d 902, 914 (N.D. Ind. 2011) (quoting *Mid-State Fertilizer Co. v. Exchange Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989)); *see also Berg v. CI Investments, Inc.*, No. 15 C 11534, 2017 U.S. Dist. LEXIS 53505, at (N.D. Ill. Apr. 7, 2017) ("Expert affidavits must 'set forth facts' and a process of reasoning leading to the expert's conclusion.") (quoting *Mid-State*, 877 F.3d at 1339). "An expert's testimony is not unreliable simply because it is founded on his experience rather than on data . . . .'" *Metavante Corp. v. Emigrant Sav. Bank*, 619 F.3d 748, 761 (7th Cir. 2010).

Here, Mr. Alvey amply supported his opinions with factual support. First, Mr. Alvey specified what documents he reviewed relating to the environmental cleanup to reach this conclusion, attaching as an exhibit an extensive list of those documents. (*Id.* ¶ 6, attachment B at pp. 13-16.) These documents, which came from the Indiana Department of Environmental Management's ("IDEM") Virtual Filing Cabinet ("VFC"), are the *very same documents* on which Landis's own expert based his opinion that Landis's cleanup was reasonable. (Dkt. 55-3, p. 39.)

Second, Mr. Alvey supported his opinions with facts he learned in reviewing the remediation documents. Mr. Alvey concluded that Zurich could have taken steps to mitigate the length and expense of closing the Sagamore Site based on the following facts:

    a.    when chlorinated solvents (chlorinated volatile organic compounds CVOCs) were first detected in the soil and groundwater near the unlined surface impoundment, Landis should have taken steps to identify the source of the CVOCs.

    b.      these potential source areas include, CVOC handling and storage areas (drum and tank storage), CVOC usage areas (degreasers) and CVOC waste handling and storage areas;

    c.      once these sources were identified, investigations should have been conducted to delineate the extent of contamination associated with each;

    d.      once the delineation identified the areas of CVOC contamination, immediate steps should have been taken to remove or isolate these sources.

(Dkt. 71-5, ¶ 13.) Similarly, Mr. Alvey stated the facts on which he based his opinion that Landis's investigation and remediation were unreasonable, which was also based on facts from the VFC:

    a.      IDEM repeatedly found Landis's closure plans to be inadequate, which prolonged the closure and negotiation process;

    b.      the VFC and Exhibits show that Landis installed degreasers at the Site as of 1973, but did not investigate the possibility of contamination from those degreasers until the late 1990s;

    c.      the VFC and Exhibits do not show the process of negotiation between Landis and IDEM, making it impossible to determine whether Landis was compelled to complete various activities by IDEM.

(*Id.* ¶ 15.) In light of Mr. Alvey's experience managing environmental remediation projects, he could permissibly opine that, based on the above facts, Landis did not act diligently or reasonably in cleaning up the Sagamore Site.

        Mr. Alvey was not required to further disclose his methodology. His experience in managing and overseeing numerous environmental remediation projects (Dkt. 71-5, pp. 9-10), taken together with the facts contained in the VFC, serves as ample support for his affidavit at summary judgment. In light of Mr. Alvey's extensive experience, he is qualified to review the history of the Sagamore Site's remediation, determine the reasonability of Landis's cleanup effort, and identify areas where Zurich could have improved that effort. No further explanation of his methodology, such as peer review or an error rate, was necessary.

301461149v1 1004168

Notably, Landis fails to point out any facts that Mr. Alvey overlooked or to explain why his methodology of reviewing the history of the remediation in light of his experience would be unreliable. Nor could it, as its own expert conducted the very same analysis in support of Landis's motion for partial summary judgment. (*See generally* Dkt. 55-3.) Landis just relies on generalities regarding the necessity for scientific methods, peer review, general acceptance, and other standards, without explaining how the absence of any of these undermines the reliability of Mr. Alvey's opinions. Landis has failed to bear its burden of proving that Mr. Alvey's testimony should be stricken.

Landis also fails to cite any persuasive authority. Rather, it relies almost entirely on the general standards of *Daubert v. Merrell Down Pharmaceuticals, Inc.*, 509 U.S. 579, 590 (1993). But as discussed above, *Daubert* does not require this Court to apply a mechanical checklist to the types of expert methods that may be reliable. In the context of this case, Mr. Alvey's method for evaluating the investigation and remediation was reliable.

Landis also cites two cases that do not help its argument. In *Westchester Fire Ins. Co. v. American Wood Fibers, Inc.*, No. 2:03-CV-178-TS, 2006 U.S. Dist. LEXIS 24225, at *15 (N.D. Ind. Mar. 21, 2006), the defendant moved to strike an expert affidavit opining as to the cause of a fire. The court rejected the defendant's contention that, because the expert "ha[d] no testing or data supporting her conclusions, . . . her conclusion [were] unreliable." *Id.* at *22. The court found her opinion "to be sufficiently reliable" where she relied on "general scientific principles underlying spontaneous combustion" and applied those general principles to determine if the conditions surrounding the fire were such that spontaneous combustion could occur. *Id.* at *19, 23-24.

301461149v1 1004168

Similarly, in *Bradley v. Brown*, 852 F. Supp. 690, 697-700 (N.D. Ind. 1994), the court addressed the defendant's motion *in limine* regarding medical opinion testimony. The court granted the motion because the experts' diagnoses of the plaintiffs had not gained general acceptance and the causes of the disease were hypothetical. *Id.* at 698-99.

This case is far different than *American Wood Fibers* and *Bradley*. Both of those cases involved expert opinions as to *scientific* questions: what was the cause of a fire and the effect of pesticides on the plaintiffs. Here, Mr. Alvey's opinion related to the costs and process of an environmental cleanup; a non-scientific question. While *Daubert* principles generally apply in either case, the necessary foundation for establishing an expert's reliability necessarily differs in scientific and non-scientific cases. Again, Landis offers no explanation for why Mr. Alvey's opinions as to the investigation or remediation were unreliable or how *American Wood Fibers* or *Bradley* demonstrate that fact.

In a patent attempt to get two bites at the apple, Landis also argues that Mr. Alvey's assertions "are insufficient to carry Zurich's burden of establishing a genuine issue of material fact on prejudice." (Dkt. 86, p. 13.) The Motion is not Landis's reply in support of its motion for partial summary judgment. The Motion deals solely with the admissibility of Mr. Alvey's affidavit, and this Court should disregard Landis's attempt to shoehorn arguments on the substance of the Rule 56 motions into the present Motion.

Regardless, Landis's argument misses the mark. Landis contends that evidence of what Zurich could have done to mitigate the cost or length of the investigation or remediation is irrelevant to the question of prejudice, citing *Wolf Lake Terminals, Inc. v. Mut. Marine Ins. Co.*, 433 F. Supp. 2d, 933 (N.D. Ind. 2005). (Dkt. 86, pp. 13-14.) *Wolf Lake Terminals* does not stand for that broad proposition. Rather, in *Wolf Lake Terminals*, the court held that "a *conclusory*

*assertion* of prejudice does not comport with the requirements of Rule 56(e)." *Wolf Lake Terminals*, 433 F. Supp. 2d at 943 (emphasis added). Specifically, in *Wolf Lake Terminals*, the insurer presented an affidavit merely stating that the delayed notice "caused prejudice to the interests of [the insurers]," without explaining "*how* the [insurers] were prejudiced." *Id.* at 942 (emphasis in original).

Mr. Alvey's affidavit contains no such conclusory assertion of prejudice; he specified that, if it had been notified earlier, it could have more quickly investigated the source of the CVOCs, investigated the extent of the contamination, isolated the source, and significantly shortened the decades-long remediation project. (Dkt. 71-5, ¶ 13.) Instead, Landis failed to investigate the degreasers as the source of the CVOCs from 1973 until the late 1990s. (Dkt. 71-5, ¶ 15.) Mr. Alvey's affidavit clearly demonstrates that, if Zurich had notice earlier, it could have conducted a more diligent investigation and remediation, which would have reduced the length and expense of the remediation.

### III. CONCLUSION

For the reasons stated above, Zurich respectfully requests that this Court deny Landis's Motion.

Respectfully submitted,

HINSHAW & CULBERTSON LLP

By: /s/ Timothy H. Wright
One of the Attorneys for Defendant
ZURICH AMERICAN INSURANCE
COMPANY, a New York Corporation,
f/k/a ZURICH INSURANCE COMPANY

Kyle A. Lansberry (#20977-49)

301461149v1 1004168

Michael R. Giordano (#31317-53)
Lewis Wagner, LLP
501 Indiana Avenue, Suite 200
Indianapolis, IN  46202-6150
317-237-0500 (Phone)
317-630-2790 (Fax)
klansberry@lewiswagner.com
mgiordano@lewiswagner.com

Michael M. Marick (#6183285)
James H. Kallianis, Jr. (#6207178)
Timothy H. Wright (#6298003)
Hinshaw & Culbertson LLP
222 N. LaSalle St., Suite 300
Chicago, IL  60601
mmarick@hinshawlaw.com
jkallianis@hinshawlaw.com
twright@hinshawlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing was filed electronically on April 5, 2018.  Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

/s/ Timothy H. Wright
Timothy H. Wright

301461149v1 1004168