UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

LANDIS+GYR INC., a Delaware Corporation, )
f/k/a LANDIS & GYR METERING, INC., )
           )
    Plaintiff,        )
           )
   v.           )   Case No. 4:16-cv-82
           )
ZURICH AMERICAN INSURANCE   )
COMPANY, a New York Corporation, f/k/a   )
ZURICH INSURANCE COMPANY,   )
           )
    Defendant.      )

**OPINION AND ORDER**

    This matter is before the court on the Motion for Partial Summary Judgment [DE 53] and

the Motion to Strike Certain Inadmissible Testimony Cited by Zurich [DE 84] filed by the

plaintiff, Landis+Gyr Inc., on December 1, 2017 and March 22, 2018, and the Rule 56(D)

Motion [DE 100] filed by the defendant, Zurich American Insurance Company, on May 14,

2018.  For the following reasons, the Motion for Partial Summary Judgment [DE 53] is

**DENIED,** the Motion to Strike Certain Inadmissible Testimony Cited by Zurich [DE 84] is

**DENIED**, and the Rule 56(D) Motion [DE 100] is **DENIED.**

*Background*

    The plaintiff, Landis+Gyr Inc., initiated this matter on October 7, 2016.  Landis seeks to

compel the defendant, Zurich American Insurance Company, to defend and indemnify Landis

against the liability claims that the United States Environmental Protection Agency (USEPA)

and the Indiana Department of Environmental Management (IDEM) brought over environmental

contamination.  Landis asserts that the allegations fall within the coverage of the primary and

umbrella policies that were issued by Zurich.

In November of 1984, Landis was required to commence an investigation under the Resource Conservation and Recovery Act (RCRA) at the Sagamore Parkway Site (Site) located at 3601 Sagamore Parkway North in Lafayette, Indiana, in response to demands from USEPA and IDEM. USEPA identified Landis as a possible source of significant contamination at the Site. Landis has indicated that the contamination was not intended or expected, rather it resulted from historical, inadvertent releases and/or spills of contaminants. Landis asserts that the contamination resulted in property damage during the Zurich policy years. Zurich had issued primary commercial general liability insurance policies to Landis for the years 1978 through 1988, and beginning in 1978 issued Landis umbrella policies, as well as several excess policies.

In 1999, administration of the investigation and remediation at the Site was transferred from USEPA to IDEM and was handled by IDEM under the Voluntary Remediation Program (VRP). The closure process dragged on for many years and finally came to an end in April of 2017. Landis was granted regulatory closure for the site and received a Covenant Not to Sue from IDEM on April 4, 2017. Landis has incurred approximately $7 million in expenses in response to the EPA and IDEM's demands, and with interest at the statutory rate, total costs incurred were over $13 million.

Landis has indicated that by at least mid-1995 it had provided notice to Zurich concerning the environmental liability claims that were pending against it. Landis asserts that it re-engaged Zurich through a letter dated September 16, 2014. Zurich's claim handler, David Olson, responded on September 19, 2014 that Zurich was investigating coverage and requested additional information. On October 17, 2014, Olson sent a second letter indicating that Zurich still was determining the availability of coverage and that he expected to issue a coverage determination within 30 days.

Approximately one year later, Julie York, a different Zurich adjuster, sent a letter to Landis indicating that she had taken over the claim and was reviewing it. York represented to Landis that the claim was flagged with the highest priority and that Zurich would be responding with a coverage determination. On July 10, 2016, Zurich still was reviewing the matter, and Landis again asked for a coverage determination on August 1, 2016. Landis has indicated that when Zurich failed to respond it filed its Complaint against Zurich on October 7, 2016. Landis asserts that Zurich is obligated to pay for all past and future liabilities associated with the contamination on and around the Site, including costs to investigate, monitor, and remediate the contamination, as well as legal defense costs and fees.

Landis has now moved for partial summary judgment on Zurich's duties to defend and to indemnify it concerning the environmental liability claims relating to the Sagamore Site. Zurich filed a response in opposition on February 2, 2018, and Landis filed a reply on March 22, 2018.

Landis also has filed a motion requesting that the court strike portions of the affidavits of Cherish Hairrell and Peter Alvey that were submitted by Zurich. Landis has argued that the affidavits consist of unsubstantiated speculation and do not purport to be the product of a proper expert opinion. Zurich filed a response in opposition on April 5, 2018, and Landis filed a reply on April 12, 2018.

The parties have filed Motions for Partial Summary Judgment on Choice of Law that are still pending before the court. The motions were fully briefed on August 28, 2018. The choice of law analysis will not affect the outcome of the motions that currently are before the court.

*Discussion*

Before addressing Landis's motion for partial summary judgment, the court first must determine what evidence it may evaluate by addressing Landis's motion to strike certain

testimony cited by Zurich.  In its response, Zurich cited and relied on an affidavit from Cherish Hairrell to support its contention that Landis did not notify Zurich of its initial claim concerning the contamination at the Sagamore Parkway Site prior to September 16, 2014.  Moreover, Zurich relied on an affidavit from Peter Alvey to support its contention that Landis's late notice prejudiced Zurich.

Landis has moved to strike paragraphs 5, 7, 8, 10, 11, 13, and 14 of Hairrell's affidavit, as well as paragraphs 13, 14, and 15 of Alvey's affidavit.  Landis asserts that the paragraphs are not based on personal knowledge and consist of unsubstantiated speculation and multiple levels of hearsay.  Thus, Landis has argued that the paragraphs are inadmissible and cannot create a genuine issue of material fact under Federal Rule of Civil Procedure 56.

**Federal Rule of Civil Procedure 56(c)(4)** mandates that, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  The affiant may include reasonable inferences drawn from his own observations but may not testify as to the knowledge or observations of another.  ***Payne v. Pauley***, 337 F.3d 767, 772 (7th Cir. 2003) (quoting ***Visser v. Packer Eng'g Assoc.***, 924 F.2d 655, 659 (7th Cir.1991) (en banc)) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience.  They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'"); *see also* ***Jenkins v. Heintz***, 124 F.3d 824, 831 (7th Cir. 1997) (affiant cannot testify as to the knowledge of another); ***Davis v. House of Raeford Farms of Louisiana LLC***, 2008 WL 2952477, *1 (W.D. La. 2008) (finding that witness was not competent to testify to what another knew).  On a motion for summary judgment, a court must

not consider those parts of an affidavit that do not comply with the requirements as set out in Rule 56. *Adusumilli v. City of Chicago*, 164 F.3d 353, 359 (7th Cir. 1998) (citing *Friedel v. City of Madison*, 832 F.2d 965, 970 (7th Cir. 1987)).

First, Landis contends that the statements in paragraphs 5, 7, 8, 10, 11, 13, and 14 of Hairrell's affidavit are hearsay and not based on personal knowledge, lack foundation, and are speculative, making them inadmissible and insufficient to establish a genuine issue of material fact. Hairrell's affidavit indicated that she was an employee of Zurich for over 15 years and was employed as a Claims Supervisor within the claims department. [Hairrell Aff. ¶2]. Landis contends that Hairrell has attested to facts dating back to the 1980's and 90's, yet she did not have the personal knowledge that was required under Rule 56(c)(4). Landis has requested that the court strike the following paragraphs:

> ¶ 5 Zurich first received notice of the environmental contamination and remediation at the Sagamore Site on September 16, 2014, when Zurich received a letter from Landis+Gyr, Inc.'s counsel, Brent Huber of Ice Miller. In that letter, Mr. Huber stated that Landis + Gyr, Inc. had previously given notice of the Sagamore Site to Zurich. By letter dated September 25, 2014, Landis contended that Zurich was notified of the Sagamore Site claim in 1987.

> ¶ 7 Zurich maintains a claims database that includes all claims reported to Zurich from May 1, 1986 through the present. Zurich does not delete claim information that is entered into this database.

> ¶ 8 Zurich employees can search all of the claims that have been reported to Zurich and entered into this database through software known as "eZACCESS."

> ¶ 10 If Zurich had received notice of the Sagamore Site after May 1, 1986, a record of the claim would have been maintained in the claim database.

> ¶ 11 Zurich has never systematically disposed of old claim files from the 1980s and 1990s, even if Zurich's relevant document retention policy would have permitted Zurich to dispose of certain types of claim files under certain circumstances. Instead, it has always been Zurich's practice to transfer older claims files to storage.

¶ 13  During this search, Zurich employees working under my supervision did locate a claim related to Landis & Gyr, Inc.'s disposal of hazardous wastes at a landfill operated by Lakeland Disposal Services in Claypool, Indiana (the "Lakeland Site").  The claim regarding the Lakeland Site was reported to Zurich in 1987 and was unrelated to the Sagamore Site.  None of the correspondence or documents in the Lakeland Site claim file referred to environmental contamination or remediation at the Sagamore site.

¶ 14  Even if the physical claim file for the Sagamore Site had been disposed of pursuant to Zurich's document retention policies, a record of the claim would have remained in the claim database and would be identifiable through a search run on eZACCESS.

Landis has argued that Hairrell does not have personal knowledge of the above statements and that they are contradicted by Zurich's written policies, practices, and procedures. Moreover, Landis asserts that according to Hairrell's deposition she gathered information from other Zurich employees to investigate and prepare for her testimony, yet she did not speak to anyone who had worked in the Zurich's records group in 1985.  Therefore, Landis contends that the statements in Hairrell's affidavit are hearsay.

Zurich has argued that Landis has ignored the fact that Hairrell was designated as Zurich's corporate witness pursuant to Federal Rule of Civil Procedure 30(b)(6).  Hairrell learned information about Zurich's claims handling and records retention procedures during the course of her employment.  Moreover, Zurich asserts that Hairrell was entitled to testify about information known or reasonably available to Zurich.  Therefore, Zurich contends that Hairrell's testimony is admissible.

A Rule 30(b)(6) designee is authorized "to testify not only to matters within his personal knowledge but also to 'matters known or reasonably available to the organization.'"  **Federal Rule of Civil Procedure 30(b)(6)**.  Thus, "[the designee] was free to testify to matters outside her personal knowledge as long as they were within the corporate rubric." *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 894–95 (7th Cir. 2004) (quoting **Rule 30(b)(6)**; citing *Pugh*

*v. City of Attica, Ind.*, 259 F.3d 619, 627 (7th Cir. 2001)); *see also **Aldridge v. Lake Cty. Sheriff's Office**,* 2012 WL 3023340, at *4 n.18 (N.D. Ill. July 24, 2012) ("the witness/designee need not have any personal knowledge") (quoting ***QBE Ins. Corp. v. Jorda Enterprises, Inc.**,* 277 F.R.D. 676, 688 (S.D. Fla. 2012)); ***In re Peregrine Fin. Grp. Customer Litig.**,* No. 12 C 5546, 2015 WL 1344466, at *8 (N.D. Ill. Mar. 20, 2015) ("A designated Rule 30(b)(6) witness is thus not limited to her personal knowledge. She also testifies vicariously for the corporation, as to its knowledge and perceptions.") (quotation omitted); ***Sara Lee Corp. v. Kraft Foods Inc.**,* 276 F.R.D. 500, 503 (N.D. Ill. 2011) (refusing to limit a 30(b)(6) deponent's "testimony strictly to matters within [his] personal knowledge" because "strictly imposing the personal knowledge requirement would only recreate the problems that Rule 30(b)(6) was created to solve"); ***Paul Harris Stores, Inc. v. PricewaterhouseCoopers, LLP**,* 2006 WL 2644935, at *6 (S.D. Ind. Sept. 14, 2006) (denying motion to strike, for lack of personal knowledge, testimony submitted in support of motion for summary judgment because witness "was designated as a Rule 30(b)(6) witness for [the corporation], allowing him to testify not only from his personal knowledge but also as to matters 'known or reasonably available to the organization.'").

However, hearsay is not admissible at the summary judgment stage just because it was provided by a witness speaking for the company at a Rule 30(b)(6) deposition. *See **Cincinnati Ins. Co. v. Gray**,* 2010 WL 3522954, at *7 (S.D. Ind. 2010) (a litigant's position at the summary judgment stage must be supported by admissible evidence). A party may not rely upon inadmissible hearsay in an affidavit or deposition to oppose a motion for summary judgment. ***Bombard v. Fort Wayne Newspapers**,* Inc., 92 F.3d 560, 562 (7th Cir. 1996). Hearsay is defined as a statement that is made outside of "the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." **Federal Rule of Evidence**

**801(c).** Generally, such a statement is "not admissible unless it falls within an exception to the hearsay rule." *United States v. Hawkins*, 803 F.3d 900, 901 (7th Cir. 2015).

The court finds that paragraphs 5, 7, 8, and 14 were within Hairrell's personal knowledge considering that she had worked for Zurich for over 15 years and was familiar with eZACCESS and how Zurich maintained its claims files. "[C]ommon sense dictates that if an affiant is an employee of a company, she has personal knowledge of events and circumstances that occurred at the company within her sphere of observation." *Westchester Fire Ins. Co., v. Am. Wood Fibers, Inc.,* 2006 WL 752584, at *4 (N.D. Ind. March 21, 2006) (citing *Davis v. Valley Hospitality Servs., LLC,* 372 F.Supp.2d 641, 653 (M.D. Ga. 2005)). Moreover, personal knowledge may be inferred from the contents of an affidavit as a whole. *See Credentials Plus, LLC v. Calderone,* 230 F.Supp.2d 890, 904–05 (N.D. Ind. 2002); *See e.g. Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir. 1990) ("Rule 56(e)'s requirements of personal knowledge and competence to testify have been met may be inferred from the affidavits themselves.").

Also, in paragraph 13 Hairrell attests that Zurich employees working under her supervision located a claim related to Landis's disposal of hazardous wastes at a landfill operated by Lakeland Disposal Services (the "Lakeland Site"). Landis has made the additional argument that paragraph 13 of Hairrell's affidavit and her deposition testimony are in direct conflict. Zurich has indicated that in the 1980s and 90s Landis only gave notice of one environmental claim, the Lakeland Disposal site. However, Landis contends that is not the case. In paragraph 13 of her affidavit, Hairrell stated that "none of the correspondence or documents in the Lakeland Site claim file referred to environmental contamination or remediation at the Sagamore Site." [Hairrell ¶13]. Landis asserts that Zurich sent a 1987 reservation of rights letter that

repeatedly referenced "claims." Moreover, the letter cited the owned property exclusion. Landis contends that exclusion did not apply to the Lakeland Site because it was not owned by Landis. However, Zurich has indicated that it was reserving its right to assert the owned property exclusion, as Landis's ownership was unclear. Also, Landis points to an email from Julie York, Zurich's claims adjuster, on October 3, 2016 that stated, "notice was tendered in 1987 pertaining to an unrelated landfill site, the 'Lakeland Disposal Site' and *possibly* other sites."

The contents of an affidavit may not conflict with the substance of the deposition testimony. If a party were permitted to create a genuine issue of material fact by changing her prior testimony "the very purpose of the summary judgment motion—to weed out unfounded claims, specious denials, and sham defenses—would be severely undercut." ***Babrocky v. Jewel Food Co.,*** 773 F.2d 857, 861 (7th Cir. 1985); ***Miller v. Heritage Products, Inc.,*** 2004 WL 1087370, at *4 (S.D. Ind. 2004). The party objecting to the affidavit must show a direct and specific conflict between the affidavit and the deposition testimony, for which there is no plausible explanation such as confusion, ambiguity, refreshed recollection, or newly-discovered evidence. ***Miller,*** 2004 WL 1087370, at *5. Landis has not cited any deposition testimony that directly contradicts paragraph 13 of the affidavit. Rather, Landis has pointed to exhibits that were presented to Hairrell at her deposition that do not specifically address the Sagamore Site.

Therefore, based on Hairrell's employment with Zurich and her use of eZACCESS, the court can infer that she has the personal knowledge to testify to her familiarity of eZACCESS. Also, she has the personal knowledge to testify to the search of claims relating to Landis because it occurred under her supervision. The court will not strike paragraphs 5, 7, 8, 13, and 14 of Hairrell's affidavit.

Summary judgment affidavits create an issue of fact only to the extent that they "provide evidence that would be admissible if offered live on the witness stand." ***Watson v. Lithonia Lighting,*** 304 F.3d 749, 751-52 (7th Cir. 2002). The court finds that paragraphs 10 and 11 are not based on Hairrell's personal knowledge. Hairrell was not employed by Zurich in the 1980s and 90s. Therefore, she does not have the requisite personal knowledge to testify that after May 1, 1986, a record of the claim would have been maintained in the claim database or about Zurich's document retention policies. In Hairrell's deposition, she indicated that she had spoken with a Zurich employee, Joel Robinette, regarding how old physical records were retained. Absent personal knowledge, the statements asserted in paragraphs 10 and 11 regarding records of claims and document retention policies in 1980s and 90s appear to be hearsay and generally are inadmissible as evidence.

The party offering evidence based on hearsay may not rely on that evidence unless it demonstrates that it falls under an exception. ***Boyce v. Moore,*** 314 F.3d 884, 889 (7th Cir. 2002). The court finds that Hairrell's statements fall within Federal Rule of Evidence 803(7), which provides an exception to the hearsay rule for absence of a record of a regularly conducted activity. **Federal Rule of Evidence 803(7)** provides:

> Evidence that a matter is not included in a record described in paragraph (6) if:
>
> > (A) the evidence is admitted to prove that the matter did not occur or exist;
> >
> > (B) a record was regularly kept for a matter of that kind; and
> >
> > (C) the opponent does not show that the possible source of the information or other circumstances indicate a lack of trustworthiness.

A party may offer evidence that no entry or record was made if there was in place a system that would normally generate such an entry or record. Hairrell attests that Zurich routinely maintained all claims reported to it through the software known as eZACCESS and that after

searching eZACCESS she was unable to find any record of the Sagamore Site claim. [Hairrell ¶ 7, 9]. Therefore, Hairrell has laid the foundation for evidence offered under Rule 803(7) that had Zurich received notice after May 1, 1986, a record would have been maintained in the database and that Zurich never systematically disposed of old claims files from the 1980s and 90s, even if the retention policy would have permitted it and that it was Zurich's practice to transfer older claims files to storage. [Hairrell ¶ 10, 11].

Moreover, Landis asserts that paragraph 11 of Hairrell's affidavit that no claim files were ever destroyed directly contradicts Zurich's own document retention policies, practices, and procedures in the 1980s and 90s. Courts must determine whether such differences are "plainly incredible" or whether they merely create a credibility issue for trial. *Patton v. MFS/Sun Life Fin. Distribs.*, 480 F.3d 478, 488 (7th Cir. 2007). The court will not strike paragraphs 10 and 11 of Hairrell's affidavit finding that the absence of a business record can be admissible under Rule 803(7).

Next, Landis has argued that the court should strike paragraphs 13, 14, and 15 of Alvey's affidavit because they were not based on sufficient facts or data to create a genuine issue of material fact that Landis's late notice prejudiced Zurich. Alvey's affidavit provides as follows:

¶ 13 If Landis's insurance company had been notified of the contamination before 2014, the insurance company could have taken numerous steps to assist in mitigating the length and cost of the closure of the Site, including but not limited to:

a. when chlorinated solvents (chlorinated volatile organic compounds CVOCs) were first detected in the soil and groundwater near the unlined surface impoundment, Landis should have taken steps to identify the source of the CVOCs.

b. these potential source areas include, CVOC handling and storage area (drum and tank storage), CVOC usage areas (degreasers) and CVOC waste handling and storage areas;

c. once these source areas were identified, investigations should have been conducted to delineate the extent of contamination associated with each;

d. once the delineation identified the areas of CVOC contamination, immediate steps should have been taken to remove or isolate these sources.

¶ 14 It is likely that the failure of Landis to properly and adequately investigate and remediate the CVOC contamination in a timely manner allowed the contaminants to migrate and ultimately increased the cost of site closure.

¶ 15 The Exhibits and the VFC do not demonstrate that Landis's investigation or remediation of Site was diligent or reasonable for various reasons, including but not limited to the following:

a. IDEM repeatedly found Landis's closure plans to be inadequate, which prolonged the closure and negotiation process;

b. the VFC and Exhibits show that Landis installed degreasers at the Site as of 1973, but did not investigate the possibility of contamination from those degreasers until the late 1990s;

c. the VFC and Exhibits do not show the process of negotiation between Landis and IDEM, making it impossible to determine whether Landis was compelled to complete various activities by IDEM.

Landis has argued that Alvery's affidavit is not admissible expert testimony. Thus, Rule of Evidence 702 supplies the rule of law here. **Federal Rule of Evidence 702** provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based upon sufficient facts or data, (c) the testimony is the product of reliable principles and methods, and (d) the witness has applied the principles and methods reliably to the facts of the case.

Rule 702 supplies a two-part test for the admissibility of expert testimony: first, the court must determine whether the expert is properly qualified, and then the court must evaluate the expert's

testimony and determine whether it is relevant and reliable.  *See **Dukes v. Illinois Central Railroad Company,*** 934 F.Supp. 939, 947 (N.D. Ill. 1996); s*ee also **Daubert v. Merrell Dow Pharmaceuticals,*** 509 U.S. 579, 597, 113 S. Ct. 2786, 2799, 125 L. Ed.2d 469 (1993).

Landis has indicated that it does not object to Alvey's qualifications as an expert, rather his failure to set forth any process of reasoning that led to his conclusions.  Landis contends the affidavit consists of speculation about what Zurich "could" have done and the "likely" outcome of Landis's failure to do as prescribed.  The Seventh Circuit has "said over and over that an expert's ipse dixit is inadmissible." ***Wendler & Ezra, P.C. v. Am. Int'l Grp., Inc.,*** 521 F.3d 790, 791 (7th Cir. 2008).  Expert affidavits must "set forth facts" and a process of reasoning leading to the experts conclusion.  ***Mid-State Fertilizer Co. v. Exch. Nat. Bank of Chicago,*** 877 F.2d 1333, 1339 (7th Cir. 1989).  "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process." ***Mid–State Fertilizer Co. v. Exch. Natl. Bank,*** 877 F.2d 1333, 1339 (7th Cir. 1989); *see **Story v. Latto,*** 702 F. Supp. 708, 709 (N.D. Ill. 1989) ("[A]n opinion, even if rendered by an expert, does not create a genuine issue of material fact unless the expert sets forth specific facts to support his opinion.").

Alvey reviewed the documents in IDEM Virtual Filing Cabinet (VFC) relating to the environmental cleanup to reach his conclusions, as well as the remediation documents.  Zurich asserts that Alvey was not required to further disclose his methodology, rather his experience taken together with the facts contained in the VFC served as ample support for affidavit.  An expert's testimony is not unreliable simply because it is founded on his experience rather than on data; indeed, Rule 702 allows a witness to be "qualified as an expert by knowledge, skill, experience, training, or education." **Federal Rule of Evidence 702** (emphasis added); *see also **Smith v. Ford Motor Co.,*** 215 F.3d 713, 718 (7th Cir. 2000).  However, Rule 702 does require

that the expert explain the "methodologies and principles" that support his opinion; he cannot

simply assert a "bottom line." *Minix v. Canarecci,* 597 F.3d 824, 835 (7th Cir. 2010).

Alvey simply did not attest that Landis did not act diligently or reasonably in cleaning up

Sagamore Site.  Rather, he explained that based on his experience and review of the history of

the remediation the reasonableness of Landis's cleanup effort and the areas where Zurich could

have improved that effort.   Unlike in *Wolf Lake Terminals, Inc. v. Mutual Marine Ins. Co.,*

433 F.Supp.2d 933, 943 (N.D. Ind. 2005) where the affidavit merely asserted prejudice, Alvey's

affidavit has not presented a conclusory assertion of prejudice.  Alvey has specified what Landis

could have done to reduce the length and the expense of the remediation.  Also, he has indicated

what facts he used to support his opinion that particular steps could have mitigated the length and

expense of closing the Sagamore Site, like investigating the extent of the contamination and

isolating the source.  [Alvey Aff. ¶13].  Thus, Landis's failure to investigate and remediate the

CVOC contamination allowed contaminates to migrate, increasing the cost of site closure.

[Alvey Aff. ¶14].  Moreover, Alvey outlined the facts that supported his opinion that Landis's

investigation and remediation was unreasonable.  [Alvey Aff. ¶15].  Therefore, Landis's motion

to strike paragraphs 13, 14, and 15 of Alvey's affidavit is denied.

Landis has moved for partial summary judgment because there is no genuine issue of

material fact on Landis's claim for liability insurance coverage.  Pursuant to **Federal Rule of

Civil Procedure 56(a),** summary judgment is proper only if it is demonstrated that "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986);

*Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679

F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).  A fact

is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. If the non-movant bears the ultimate burden of persuasion on an issue at trial, the requirements are not as onerous for the moving party. *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013). Under this circumstance, the moving party either can come forward with affirmative evidence negating an element of the opponent's claim or assert that the nonmoving party has insufficient evidence to succeed on its claim. *Modrowski*, 712 F.3d at 1169.

Summary judgment may be entered against the non-moving party if it "is unable to 'establish the existence of an essential element to [the party's] case, and on which [that party] will bear the burden of proof at trial . . .'" *Kidwell*, 679 F.3d at 964 (quoting *Benuzzi v. Bd. of Educ.*, 647 F.3d 652, 662 (7th Cir. 2011) (quoting *Celotex*, 477 U.S. at 322)). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Blythe Holdings, Inc. v. DeAgnelis*, 750 F.3d 653, 656 (7th Cir. 2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). The non-moving party must show specific facts that create a genuine issue for trial. *Blythe*, 750 F.3d at 656.

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial. *Anderson*, 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Stephens*, 569 F.3d at 786; *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party. . . [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson*, 477 U.S. at 250; *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149–51, 120 S. Ct. 2097, 2109, 147 L. Ed. 2d 105, 120–22 (2000) (setting out the standard for a directed verdict); *Celotex*, 477 U.S. at 322–23; *Stephens*, 569 F.3d at 786; *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008) (stating that a genuine issue is one on which a reasonable fact finder could find for the nonmoving party); *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008) (stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Blythe*, 750 F.3d at 656 (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)).

Landis has moved for partial summary judgment on Zurich's duty to defend and indemnify Landis for decade's long environmental clean-up. Interpretation of an insurance policy presents a question of law that is particularly suitable for summary judgment. *State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 848 (Ind. 2012) (citations and quotations omitted). Landis is seeking coverage for damages because of property damages that were caused by an occurrence. Zurich's policies have defined "property damage" in relevant part as "injury to or destruction of tangible property." Landis also asserts that the underlying claim triggers coverage under the personal injury part of the policy. However, in the reply brief Landis has

indicated that the personal injury coverage is irrelevant for purposes of the Rule 56 motion because Landis undisputedly has triggered coverage under the property damage portion of the policy.

Zurich issued policies of general liability insurance to Landis & Gyr, N.A., Inc., and Landis & Gyr, Inc. from October 1, 1978 to October 1, 1988. Zurich has indicated that the policies consisted of 26 commercial general liability (CGL) primary policies, commercial umbrella liability policies, and excess umbrella liability policies. Generally, the primary policies covered damages Landis was legally obligated to pay because of "property damage" caused by an "occurrence," subject to all of the policies other terms and conditions. [DE 55-4].

Landis represents that there is no dispute that the underlying claim relates to the investigation and cleanup costs it incurred as a result of discovering TCE contamination on its property from historical degreasing operations. Thus, the facts demonstrate that there was an occurrence that caused property damage that occurred during Zurich's policy periods. Zurich has not presented any argument to the contrary on that issue.

In the event of an occurrence, the policies required:

> written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with the respect to the time, place, and circumstances thereof. [DE 55-4].

> If a claim or suit is brought against Landis "immediately forward to Zurich every demand, notice, summons or other process received by Landis." [DE 55-4].

> "The insured shall not except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of the accident." [DE 55-4].

Landis contends that it has complied with its duties under the terms of the policies and provided timely notice of the claim. In support, Landis has provided sworn testimony from its

former counsel and long-time project manager.  Landis represents that notice of an environmental claim from the Sagamore Site, based on IDEM and RCRA actions, was tendered to Zurich along with the other environmental liability claims "at some time no later than mid-1995."  Thus, Landis asserts that Zurich has failed to defend its insured for a claim that is at least twenty-two years old and that involves a cleanup that lasted nearly thirty years.  Landis contends that Zurich's inability to locate the claim file does not prove that it did not receive notice and its lack of admissible evidence amounts to pure speculation, which is insufficient to create a genuine issue of material fact.  Moreover, Landis asserts that it provided notice to Zurich in 2014, so even if its notice was late Zurich was not prejudiced and thus cannot avoid its obligations under the policies.

Therefore, Landis represents that the only issue in dispute is whether it provided notice of the Sagamore claim to Zurich some time no later than mid-1995.  In Indiana, the notice requirement of an insurance policy is "material, and of the essence of the contract."  *Miller v. Dilts,* 463 N.E.2d 257, 265 (Ind. 1984).  The purpose of prompt notice is to give "the insurer an opportunity to make a timely and adequate investigation of all the circumstances surrounding the accident or loss."  *Miller,* 463 N.E.2d at 265.

In support of its claim that it provided notice to Zurich before mid-1995, Landis has provided the affidavits of John Mastarone and Roger Bennett.  John Mastarone had been employed by Landis since May 13, 1985.  [Mastarone Aff. ¶2].  Mastarone's title was the Senior Project Manager, which included environmental coordinator duties and managing the environmental remediation projects.  [Mastarone Aff. ¶3].  Mastarone's affidavit stated:

> At least by mid-1995, notice on behalf of Landis+Gyr had been given to all of the general liability insurers of the company, including its lead primary insurer Zurich, concerning all of the environmental liability claims against the company.  The Sagamore Parkway site listed above was the largest and

most troubling environmental liability the company faced at the time. [Mastarone Aff. ¶7].

Roger Bennett attested that he was former counsel for Landis and from a period beginning in mid-1995, he was personally involved in representing Landis concerning environmental insurance coverage issues. [Bennett Aff. ¶2, 3]. Bennett's affidavit stated:

> With information regarding, among other things, sites for which Landis . . . had potential responsibility, and with lists of comprehensive general liability and umbrella or excess insurers provided by Landis . . . I confirmed that notice of claims or potential claims had been provided to all comprehensive general liability insurers, as to all sites, on or before June 28, 1995. [Bennett Aff. ¶5].

Zurich has argued that the above statements contained in the affidavits were vague legal conclusions that Landis had complied with its notice obligation, and thus should be stricken. It is well settled that a witness is not permitted to testify to legal conclusions. *See **United States v. Johnson**,* 223 F.3d 665, 671 (7th Cir. 2000) ("Witnesses testify about fact, not law."). Zurich has indicated that neither affidavit stated how notice was provided nor the actual date on which notice was given. Landis contends that although they do not specify the manner or time of notice, the affidavits are statements by individuals with personal knowledge.

**Federal Rule of Civil Procedure 56(c)(4)** mandates that, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The court finds that the affidavits do not offer legal conclusions. Rather, the statements attested to by Mastarone and Bennett are based on their first-hand knowledge that notice was given on behalf of Landis to Zurich sometime before mid-1995. Thus, the court will not strike the affidavits of Mastarone and Bennett. Moreover, according to **N.D. Ind. L.R. 56-**

**1(e)** any disputes about the admissibility of evidence should be addressed in a separate motion in accordance with L.R. 7-1.

Zurich contends that even if the court declines to strike the affidavits a dispute of material fact remains, thus precluding summary judgment in favor of Landis. Zurich asserts that it did not receive notice of the Sagamore claim until 2014. Landis has argued that Zurich has not provided any credible evidence contradicting the testimony of Mastarone and Bennett. Also, Landis contends that Zurich has relied on pure speculation to support its argument that it did not receive notice until 2014.

However, contrary to Landis's argument Zurich has relied on the affidavit of Cherish Hairrell which was the subject of a motion to strike. As previously discussed, the evidence relating to the Zurich business records is admissible along with the evidence that a diligent search failed to reveal the claimed notice. The Hairrell affidavit has created a factual dispute on this issue. Therefore, since the court has determined that a factual dispute exists over notice of the Sagamore claim, it will not address the additional arguments including Zurich's other defenses, the statute of limitation defense, pre-tender costs, personal injury coverage, voluntary payments, and the known loss doctrine.

Zurich has filed a Motion for Partial Summary Judgment on Choice of Law [DE 73] and Landis has filed a Cross Motion for Summary Judgment on Choice of Law [DE 122]. The motions will be addressed by the court at a later date. The court acknowledges that there is a conflict between Indiana and New York law as it relates to the late notice defense. According to Indiana law, the insurance company may establish the late notice defense only if it is prejudiced by the insured's late notice. ***Tri-Etch, Inc. v. Cincinnati Ins Co.,*** 909 N.E.2d 997, 1005 (Ind.

2009).  However, New York law does not require prejudice.  ***Argo Corp. v. Greater N.Y. Mut. Ins. Co.,*** 4 N.Y.3d 332, 339 (N.Y. 2005).

Notice is a threshold requirement which must be met to put an insurer on notice that a controversy exists which requires the cooperation of the insured.  ***Miller v. Dilts,*** 463 N.E.2d 257, 265 (Ind. 1984).  Under the late notice defense, the insured first must show that it provided "reasonable notice" to the insurer.  ***Askren Hub States Pest Control Services, Inc. v. Zurich Insurance Company,*** 721 N.E.2d 270, 277-78 (Ind. Ct. App. 1999).  Although occasionally a question of fact, "*[w]hen the facts are not in dispute,* what constitutes reasonable notice is a question of law for the court to decide."  ***Askren,*** 721 N.E.2d at 278 (emphasis added).  The court cannot determine whether notice was reasonable, as a matter of law, when the timing of that notice is in dispute.  However, Landis contends that even if notice was not provided in 1995, and therefore was late, Zurich cannot avoid its obligations because it was not prejudiced.

The parties do not dispute that notice was given in 2014, approximately 30 years after environmental remediation and negotiation with IDEM occurred.  Late notice is presumptively prejudicial to the insurer.  *See* ***Tri–Etch, Inc. v. Cincinnati Ins. Co.,*** 909 N.E.2d 997, 1005 (Ind. 2009).  Therefore, insurers seeking to avoid liability on the late notice defense must show that they actually were prejudiced by the late notice in order to survive summary judgment in the insured's favor *once* the insured has put forth evidence that no prejudice occurred.  *See* ***Erie Insurance Exchange v. Stephenson,*** 674 N.E.2d 607, 612 (Ind. Ct. App. 1996) (noting that the insured can present evidence "to rebut the presumption of prejudice as a matter of law").

Landis asserts that it has put forth ample evidence that Zurich did not suffer prejudice as a result of the cleanup proceeding without Zurich's involvement.  Landis stated that it worked diligently with Mastarone to comply with IDEM demands and minimize exposure.  Also, Landis

has indicated that it was in constant communication with IDEM and secured the services of multiple environmental consultants to investigate and remediate the property. However, it has not designated evidence in the record to support those statements. Moreover, Zurich contends that if it had received notice earlier it could have evaluated the claim and taken steps to mitigate the length and cost of the closure of the Sagamore site. [Alvey Aff. ¶13].

The court finds that Landis has not put forth enough evidence to establish that Zurich was not prejudiced, and therefore has not rebutted the presumption. *See Sheehan Constr. Co. v. Continental Cas. Co.,* 938 N.E.2d 685, 689 (Ind. 2010) (observing that, once prejudice is presumed, the burden is on the insured to establish some evidence that prejudice did not occur in the particular situation), *reh'g denied; Town of Plainfield v. Paden Engineering Co., Inc.,* 943 N.E.2d 904, 916 (Ind. Ct. App. 2011). Since Landis has failed to rebut the presumption a question of fact remains as to whether Zurich was prejudiced by Landis's late notice. Therefore, the conflict in Indiana and New York law would not make a difference in the outcome on this issue.

Additionally, in the reply brief Landis asserts that even if the court found that "notice was not given until 2014, Landis should still prevail because Zurich failed to issue a reservation of rights letter, disclaimer, or take any coverage position since the 2014 notice, other than to assert that notice was untimely." Therefore, Landis represents that regardless of the state's substantive law that applies, Zurich should not be permitted to add new defenses in the event that its late notice defense fails. This issue was presented for the first time in the reply brief, and therefore is waived. It is well settled law in the Seventh Circuit that arguments raised for the first time in a reply brief are waived. *See River v. Commercial Life Ins. Co.,* 160 F.3d 1164, 1173 (7th Cir. 1998).

In the response in opposition, Zurich requested that pursuant to Federal Rule of Civil Procedure 56(D) the court defer ruling on Landis's motion for partial summary judgment until it had the opportunity to conduct further discovery on the matters raised in the motion. Landis argued that the motion was procedurally improper because it was not made by separate motion. Landis also argued that it was unnecessary because Zurich had ample opportunity to depose Landis's affiants before responding to the partial motion for summary judgment. Zurich filed the Rule 56(D) Motion [DE 100] on May 14, 2018, to cure its procedural defect and requested that the court defer ruling on the motion for partial summary judgment until discovery closed and Zurich had an opportunity to supplement its response. At the time Zurich filed the Rule 56(D) motion, the motion for partial summary judgment was fully briefed. Accordingly, the court denies the motion.

Based on the foregoing reasons, the Motion for Partial Summary Judgment [DE 53] is **DENIED,** the Motion to Strike Certain Inadmissible Testimony Cited by Zurich [DE 84] is **DENIED**, and the Rule 56(D) Motion [DE 100] is **DENIED.**

ENTERED this 5th day of October, 2018.

/s/ Andrew P. Rodovich
United States Magistrate Judge