UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| LANDIS+GYR INC., a Delaware Corporation, f/k/a LANDIS & GYR METERING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ZURICH AMERICAN INSURANCE COMPANY, a New York Corporation, f/k/a ZURICH INSURANCE COMPANY, <br><br> Defendant. | Case No. 4:16-cv-82 |

## OPINION AND ORDER

This matter is before the court on the Motion for Partial Summary Judgment on Choice of Law [DE 73] filed by the defendant, Zurich American Insurance Company, on February 2, 2018, and the Cross Motion for Partial Summary Judgment on Choice of Law [DE 122] filed by the plaintiff, Landis+Gyr Inc., on June 20, 2018. For the following reasons, the Motion for Partial Summary Judgment on Choice of Law [DE 73] is **GRANTED**, and the Cross Motion for Partial Summary Judgment on Choice of Law [DE 122] is **DENIED.**

*Background*

The plaintiff, Landis+Gyr Inc., initiated this matter on October 7, 2016, against the defendant, Zurich American Insurance Company. This action arises out of Zurich's alleged wrongful denial of coverage and mishandling of a long-standing environmental liability claim. Landis seeks to recover monies it expended to investigate and remediate a Resource Conservation and Recovery Act (RCRA) surface impoundment waste management unit located at 3601 Sagamore Parkway North in Lafayette, Indiana. It also has alleged that Zurich acted in bad faith in processing the claim.

In November of 1984, Landis was required to commence an investigation under the RCRA at the Sagamore Parkway Site (Site) in Lafayette, Indiana, in response to demands from the United States Environmental Protection Agency (EPA) and the Indiana Department of Environmental Management (IDEM). The EPA identified Landis as a possible source of significant contamination at the Site. Landis asserts that the contamination resulted in property damage during the Zurich policy years. Zurich contends that it has no record of this claim. However, Landis has alleged that Zurich was notified many years ago and wrongfully denied coverage based on the pollution exclusion, which is not a bar to coverage under Indiana law. Landis has indicated that it expended millions of dollars through a lengthy RCRA Corrective Action to investigate and to remediate contamination at the site. Therefore, it seeks to hold Zurich liable and to obtain restitution and recovery.

Zurich has argued that the court must undertake a choice-of-law analysis because there are several critical coverage issues that will depend upon which state's substantive law applies. Specifically, Zurich has indicated that Indiana law differs from New York and Connecticut law on the relevant coverage issues, including the pollution exclusion, late notice defense, and personal injury coverage. Zurich asserts that it is entitled to summary judgment that New York law applies to the 21 primary, excess, and excess umbrella policies in effect from October 1, 1977 to October 1, 1986, and that Connecticut law applies to the 6 primary, excess, and excess umbrella policies in effect from October 1, 1986 to October 1, 1988.

Landis filed a response in opposition on June 20, 2018, and also filed a cross-motion for partial summary judgment on choice of law. Landis has argued that Indiana law applies to all insurance coverage issues, while Illinois law applies to issues of bad faith and punitive damages.

Zurich filed a reply in further support and response in opposition on August 1, 2018, and Landis filed its reply on August 28, 2018.

*Discussion*

Pursuant to **Federal Rule of Civil Procedure 56(a),** summary judgment is proper only if it is demonstrated that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); *Stephens*, 569 F.3d at 786.

Where the court is faced with cross-motions for summary judgment, "the court must construe all inferences in favor of the party against whom the particular motion is made." *Maclin v. SBC Ameritech,* 520 F.3d 781, 786 (7th Cir. 2008). Once a party has made a properly-supported motion for summary judgment, the opposing party may not simply rest upon the pleadings but must instead submit evidentiary materials which "set forth specific facts showing that there is a genuine issue for trial." *Maclin,* 520 F.3d at 786. A choice of law issue is a matter of law appropriate for summary judgment. *Flowers v. Southwest Airlines Co.,* 2007 WL 118874, at *8 (S.D. Ind. 2007).

The Seventh Circuit has noted that before a court engages in a choice of law analysis, it first must determine whether a conflict of law actually exists. *In re Griffin Trading Co.,* 683

F.3d 819, 824 (7th Cir. 2012) (citing *Prudential Ins. Co. of Am. v. Kamrath,* 475 F.3d 920, 924 (8th Cir. 2007)).  In the present case, the court finds, and the parties agree, that Indiana courts and New York and Connecticut courts have ruled contrary to each other on coverage issues, including the pollution exclusion.  Therefore, the court concludes that a choice of law inquiry is required.

When a federal district court sits in diversity, it must determine the applicable substantive law based on the choice of law rules of its forum state.  *Rice v. Nova Biomedical Corp.,* 38 F.3d 909, 915 (7th Cir. 1994).  Therefore, the court must apply Indiana choice-of-law rules.  Under Indiana law, the interpretation of insurance policies is a contract action for choice of law purposes.  *Travelers Ins. Companies v. Rogers,* 579 N.E.2d 1328, 1330 (Ind. Ct. App. 1991).  In contracts cases, Indiana "applies only the law of the state with the most intimate contacts." *Nat'l Union Fire Ins. Co. v. Std. Fusee Corp.,* 940 N.E.2d 810, 815 (Ind. 2010) (citing *W.H. Barber Co. v. Hughes,* 223 Ind. 570, 63 N.E.2d 417, 423 (1945)).  In determining which state has the most intimate contacts, the list of factors that courts in Indiana are to consider include:  (1) the location of the subject matter of the contract; (2) the place of contracting; (3) the place where contract negotiations occurred;  (4) the place of performance; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  *Restatement (Second) of Conflict of Laws § 188 (1971).   Restatement (Second) of Conflict of Laws § 193 (1971),* to which subsection (1) of § 188 defers, has further guided the court's consideration of the subject matter of the contract.  *American Employers Ins. Co. v. Coachmen Industries, Inc.,* 838 N.E.2d 1172, 1176–77 (Ind. Ct. App. 2005).

As an initial matter, the declaration pages of the Policies in effect from October 1, 1977 to October 1, 1982 identified Landis & Gyr, N.A., Inc. as the named insured, with an address of

either 4 Westchester Plaza, Elmsford, New York or 101 Executive Boulevard, Elmsford, New York. The Policies in effect from October 1, 1982 to October 1, 1986 identified Landis & Gyr, Inc. as the named insured, with an address of 4 Westchester Plaza, Elmsford, New York. The Policies in effect from October 1, 1986 to October 1, 1988 identified Landis & Gyr, Inc.'s address as 100 First Stamford Place, Stamford, Connecticut. Additionally, at various times the Policies listed: Duncan Electric Co., Inc.; Landis & Gyr Metering, Inc.; Moore Systems, Inc.; Landis & Gyr Systems, Inc.; Metal Products Co.; Dayton Electronics Products Co.; and Andover, Inc. as named insureds.

In October of 1982, Landis & Gyr of North America and Landis & Gyr New York merged to form Landis & Gyr, Inc. Landis & Gyr, Inc. would have 2 main subsidiaries, the Duncan Division, consisting of Metal Products, Dayton Electronics, and Duncan Electric, and Moore Systems. [DE 74-2 at 21]. In 1984, Landis changed the name of Duncan Electric to Landis & Gyr Metering. [DE 74-2 at 90]. Landis's Rule 30(b)(6) deponent, John Mastarone, indicated that Duncan Electric and Landis & Gyr Metering, Inc. were subsidiaries of Landis & Gyr N.A., Inc. or Landis & Gyr, Inc. [DE 124-1 at 69:21-69:23, 71:13-72:10].

The general rule is that parent and subsidiaries are presumed separate. *See **Greater Hammond Cmty. Servs., Inc. v. Mutka**,* 735 N.E.2d 780, 784 (Ind. 2000). However, like ***American Employers Ins. Co. v. Coachmen Industries, Inc.,*** 838 N.E.2d 1172, 1177–78 (Ind. Ct. App. 2005), the parent and subsidiaries did not act separately but rather acted through the parent company in securing the policies. There is no dispute that Duncan Electric was a subsidiary of Landis. However, Landis contends that under the Policies, Duncan Electric was entitled to the exact same rights as Landis & Gyr, N.A. and the other named insureds. The court must frame the choice of law/contract interpretation issue based on the parties who entered into

the contracts. ***Coachmen Industries, Inc.,*** 838 N.E.2d at 1178. Landis has not provided any evidence that Duncan Electric negotiated the Policies on its own behalf. Moreover, Landis & Gyr, N.A., Inc. and Landis & Gyr, Inc. were the only entities identified by name and address on the Policies' declaration pages.

The court starts by attempting to determine the principal location of the insured risk, or in terms of the § 188, the location of the subject matter of the contract. ***Restatement (Second) § 193 cmt. b.*** "In insurance contract cases, we first attempt to determine the principal location of the insured risk. If the principal location of the insured risk can be determined, it is given more weight than other factors. If no such location exists, we continue our analysis of the most intimate contacts." ***Standard Fusee,*** 940 N.E.2d at 816; s*ee **Stonington Ins. Co. v. Williams,*** 922 N.E.2d 660, 666 (Ind. Ct. App. 2010) (noting that insurance contracts focus on the principal location of the insured risk, but where there is no set location of that risk, attention turns back to the most intimate contacts factors provided in § 188).

The principal location of the insured risk can be determined by identifying "the state having more insured sites than any other." ***Standard Fusee,*** 940 N.E.2d at 816; s*ee also **Coachmen Industries., Inc.,*** 838 N.E.2d at 1181 ("[W]hile Coachmen's risks were scattered throughout the country because of its numerous subsidiaries, Indiana is the principal location of the insured risk because Indiana is, and has always been, the state with the largest number of insured sites."); ***Emp'rs Ins. of Wausau v. Recticel Foam Corp.,*** 716 N.E.2d 1015, 1025 (Ind. Ct. App. 1999) ("[A]lthough there was potential liability in both Indiana and New York, Indiana was the location of more sites."). The analysis for this factor is largely objective and based upon a simple count of insured sites.

Zurich contends that because New York had the most insured sites from October 1, 1977 to October 1, 1982, New York was the principal location of the insured risk for those periods. However, Landis has argued that there never were more than two named insureds operating in New York in any given policy period. Specifically, Landis contends that in 1977-81 and 1983-86 there was one New York named insured, in 1981-83 two named insureds, and in 1986-88 zero named insured. [DE 74-1 at 10, 13, 27, 48, 83, 97, 111, 127, 142, 158]. Yet, Landis has indicated that Indiana had at least one named insured every policy year and two named insured in 1980-82. The court, in reviewing the Policies for the relevant period, agrees that Zurich has not provided uncontradicted evidence that New York had the most insured sites from 1977 through 1982. [DE 74-1 at 27, 48, 83, 97]. Therefore, the court is unable to determine the state with the largest number of insured sites.

When one state does not have more insured locations than any other state, Zurich has argued that the insured's headquarters is considered the principal location of the insured risk. *See* ***Standard Fusee,*** 940 N.E.2d at 816. Landis's parent companies (Landis & Gyr, N.A., Inc. and Landis & Gyr, Inc.) were headquartered in New York through 1986 and Connecticut through 1988. Additionally, Zurich expressly referred to Landis & Gyr, N.A.'s Elmsford, New York, location as the "Address of Principal Risk." [DE 74-2 at 11, 107]. However, Landis has argued that ***Standard Fusee*** did not apply a brightline rule that if the insured sites did not reveal that one state had more insured sites than another, the principal location of insured risk was the insured's headquarters. Rather, Landis asserts that where the two locations are otherwise "relatively comparable" the location of the company's headquarters only "suggests that is the principal location of the insured risk." ***Standard Fusee,*** 940 N.E.2d at 816.

Thus, Landis contends that the court must consider the quantitative data in determining the principal location of the insured risk. Landis has indicated that Indiana is the "center of gravity" and the state most intimately in contact with the facts regarding the insured risk. It has represented that the Indiana location accounted for the bulk of total revenue to the company and the most employees, environmentally-regulated facilities, and insurance claims. In support of its contention, Landis has indicated that during the policy periods of 1979-1980 and 1984-1985 the total estimated sales and premium allocation to Duncan Electric, located in Lafayette, Indiana, surpassed all the other locations combined. [DE 74-1 at 50, DE 124-2 at 16]. Mastarone, who began working for Landis in 1985, testified that the sales and the number of employees in Lafayette far exceeded any other location. [DE 124-1 at 244:22-245:1]. Also, Mastarone testified that the payment of the policy's premiums generally was handled by the finance department in Lafayette. [DE 124-1 at 56:13-56:16]. In further support, Landis indicated that the Duncan Meter Plant and Andover, both located in Indiana, accounted for 45 out of 48 open claims and 83 out of 110 closed claims as of 1979-1981. [DE 124-7 at 64].

Zurich contends that Landis has failed to demonstrate that the Sagamore Site had greater revenue or more employees than any other insured site throughout the relevant period. Zurich has argued that the evidence provided by Landis related to worker's compensation insurance and is not relevant to the instant matter. Additionally, Zurich has argued that Landis did not submit any specific, reliable data about the revenue or number of employees. Instead, Landis relied on Mastarone's testimony. Also, Landis only submitted the premium calculation for the 1979-80 and 1984-85 policy periods. Yet, Landis emphasizes that because Indiana maintained one site every policy year coupled with the volume of business generated out of the Lafayette location

and the number of peopled employed in Indiana indicates that the "overall number and quality of contacts" favors Indiana. *See* **Coachmen,** 838 N.E.2d at 1181.

The principal location of the insured risk must be determined at the time the contract is formed, in other words, the court takes a prospective look to determine which law will be applied. **Travelers Indem. Co. v. Summit Corp. of Am.,** 715 N.E.2d 926, 933 n. 6 (Ind. Ct. App. 1999) (holding that the location of the risk "must be determined at the time the contract is formed", rather than after the fact, in light of where damage actually occurred). Thus, the court must apply the law of the state which the parties understood was to be the principal location of the insured risk. However, "the location of the risk has less significance . . . where the policy covers a group of risks that are scattered throughout two or more states." **Restatement (Second) § 193 cmt. b.** The Policies in this matter covered multiple states.

Landis & Gyr, N.A. Inc., later Landis & Gyr, Inc., were headquartered in New York from 1977 to 1986 and Connecticut from 1986 to 1988. The Policies' declarations pages only listed Landis's New York and Connecticut addresses. Additionally, Zurich listed the "Address of Principal Risk," as Elmsford, New York. There is no dispute that the Policies provided coverage to various entities across the United States, including New York, Florida, California, Ohio, and Indiana. However, these additional entities did not specialize in metering operations exclusively like Duncan Electric and Landis & Gyr Metering. Thus, metering operations was one of a variety of risks insured by Zurich. Focusing on a specific type of risk after it occurs fails to account for the other contemplated risks and ignores the basic premise that "as the number of sites increase, so does the risk of an occurrence." **Coachmen,** 838 N.E.2d at 1181.

Additionally, other than the size, revenue, and number of employees of the Indiana metering operation, Landis has not pointed to any evidence that the parties believed that the

9

principal location of the insured risk was the largest and most significant in Indiana. The total estimated sales data Landis relied on to show the premium calculation only identified two policy years, rather than the relevant eleven-year policy period. Also, the number of open claims related to worker's compensation policies, a separate coverage that is not at issue in this matter. Therefore, the evidence points to New York and Connecticut as the principal location of the insured risk.

The court must consider the other contacts present in the instant matter. The place of contracting is defined as "the place where occurred the last act necessary, under the forum's rules of offer and acceptance, to give the contract binding effect." ***Restatement (Second) § 188.*** Essentially, the court must determine the state in which Landis manifested assent to the insurance policies with Zurich. Indiana courts regularly have struggled to find that this contact conclusively points to a single state. ***Coachmen,*** 838 N.E.2d at 1179 (although evidence suggested that Indiana was the place of contracting, the Court could not draw a conclusive determination).

Zurich's Manhattan office was involved in the underwriting and/or issuance of all the CGL policies and excess/umbrella policies. [Harper Aff. ¶ 11]. Moreover, Zurich's New York office sent the Policies to Landis's insurance broker, Marsh & McLennan, at its New York office. [Harper Aff. ¶ 15]. Therefore, the Policies were issued to Marsh at its New York address and Landis at its New York or Connecticut addresses. [Harper Aff. ¶ 15, 16]. Additionally, the invoices for the premiums were sent to Landis from Zurich's New York office to Marsh's New York office. [Harper Aff. ¶ 14]. Zurich asserts that as Landis's agent, Marsh, negotiated the terms on its behalf and every correspondence came from or was sent to New York. [Harper Aff.

¶ 13]. It is Zurich's contention that the last act giving rise to the formation of the Policies in effect from 1977 to 1986 occurred wholly in New York.

Landis disputes this contention by arguing that Marsh's involvement was insignificant because it was a mere intermediary, neither an insured nor party to the contract. Additionally, Landis has argued that the Policies were sent and maintained in Lafayette. However, Mastarone indicated that he was unaware of where the Policies were delivered. [DE 124-1 at 58:12-16]. Mastarone testified that payment of the policy's premiums generally was handled by the finance department in Lafayette. [DE 124-1 at 56:13-16]. Yet, he was unable to indicate who signed the checks for the policy premiums or where the checks were sent. [DE 124-1 at 56:17-19, 57:18-23]. Landis indicated that its treasurer and other finance department employees were located in Lafayette. Landis submitted a Certificate of Admission for Duncan Electric with a list of its executives. [DE 124-7 at 25]. Most of the executives were located in Indiana. However, it would be logical that executives of an Indiana subsidiary would be located in Indiana.

Additionally, Landis contends that it communicated and negotiated its Policies from Indiana. However, Landis has not designated any evidence of communication from Indiana that related to the procurement or negotiation of the Policies. Rather, Landis has submitted a document regarding Duncan Electric changing its name to Landis & Gyr Metering, as well as requests to obtain certificates of insurance. A certificate of insurance is not an insurance policy, rather it "is issued as a matter of information only," "confers no rights upon the certificate holder," "does not affirmatively or negatively amend, extend or alter the coverage afforded by the policies," and "does not constitute a contract between the issuing insurer(s), authorized representative or producer, and the certificate holder." ***Cincinnati Ins. Co. v. Vita Food Products, Inc.,*** 808 F.3d 702, 705 (7th Cir. 2015).

11

Zurich has indicated that its New York office issued invoices for Landis's premiums to Marsh's New York office, sent copies of the Policies to Marsh in New York, and issued copies of the Policies to Landis in either New York or Connecticut. [Harper Aff. ¶ 14, 15, 16]. Therefore, the Policies were underwritten, delivered, and invoiced in New York. There was relatively limited evidence of Indiana's involvement in procuring the Policies, and if so, it related specifically to Duncan Electric and/or Landis & Gyr Metering. There may not be conclusive evidence where the contract was formed, but the facts tend to favor New York.

The place of negotiation of the contract asks the court to determine where the parties negotiated the terms of the insurance policies at issue in this case. Importantly, the word "negotiation" implies a back-and-forth discussion, in which both parties make concessions and demands. ***Visteon Corp. v. National Union Fire Ins. Co. of Pittsburgh, PA,*** 2013 WL 3814668, at *6 (S.D. Ind. 2013). Landis contends that the Policies were negotiated in Indiana. Landis asserts that all but one of its executives were located in Lafayette and that it was Lafayette personnel who communicated directly with Marsh. [DE 124-7]. Yet, the communications related to the procurement of certificates of insurance, rather than the negotiation of Landis's Policies, and these communications specifically related to Duncan Electric.

Zurich's New York office was involved in the underwriting and issuance of all the Policies. [Harper Aff. ¶ 11]. Marsh negotiated the terms of the Policies on Landis's behalf and advised Zurich of necessary changes to Landis's coverage. [Harper Aff. ¶ 13]. Zurich has indicated that Marsh wrote Zurich's New York office requesting necessary premium adjustments and exclusions to the Policies. [DE 74-2 at 72, Harper Aff. ¶ 13, Exhibit 26]. Thus, the vast majority of evidence supports that the Policies were negotiated between Marsh's New York office and Zurich's New York underwriting office.

Indiana courts consistently have defined the place of performance as "the location where the insurance funds will be put to use." *See* **Standard Fusee,** 940 N.E.2d at 817; **Coachmen,** 838 N.E.2d at 1180.  Importantly though, the comments to the Restatement explain that this factor "can bear little weight in the choice of the applicable law when (1) at the time of contracting [the place of performance] is either uncertain or unknown . . ." ***Restatement (Second) § 188 cmt. e.***

Landis contends that at the time of contracting Zurich was aware that Lafayette, Indiana, was the largest operation, that it was the only one engaged in degreasing and plating operations, and that it used RCRA-regulated hazardous chemicals.  However, the Policies insured entities in New York, Florida, California, and Ohio.  Thus, the court concludes that the place of performance was indeterminate because at the time of contracting it was uncertain where the funds would be put to use.

The final factor is the domicile, residence, nationality, place of incorporation, and place of business of the parties.  The comments to the Restatement direct the court to give greater weight to each party's principal place of business:  "[A] corporation's principal place of business is a more important contact than the place of incorporation, and this is particularly true in situations where the corporation does little, or no, business in the latter state." ***Restatement (Second) § 188 cmt. e.***  Landis was incorporated in Delaware, however, maintained its principal place of business in New York from 1977 to 1986 and Connecticut from 1986 to 1988.  Zurich was incorporated in New York, while its principal place of business was in Illinois.  This factor tends to favor New York and Connecticut law.  The only Indiana contact is from its subsidiaries, Duncan Electric and/or Landis & Gyr Metering.

The court in applying New York law to certain Policies and Connecticut law to others does not violate Indiana's uniform contact approach. The court must apply the law of a single state in interpreting an insurance policy, even if the policy covers multiple risks in multiple states. **G & S Holdings, LLC v. Continental Cas. Co.,** 2011 WL 855345, at *5 (N.D. Ind. 2011). Zurich requests that the court apply New York law to the Policies in effect from October 1, 1977 to October 1, 1986 and Connecticut law to the Policies in effect from October 1, 1986 to October 1, 1988. The court in doing so would be applying the law of a single state to each of the Policies, consistent with the uniform contract approach.

Landis has provided some evidence to show that the bulk of Landis's operations occurred in Indiana. However, Landis was headquartered in New York and Connecticut and the vast majority of evidence indicates that the place of contracting and negotiation occurred in New York. Regardless of whether this court objectively bases its determination on the fact that New York and Connecticut are implicated more, or the court subjectively considers how each factor should be weighed, the end result is the same. The court has determined that New York and Connecticut have the most intimate contacts, and therefore will apply New York law to the Policies in effect from October 1, 1977 to October 1, 1986 and Connecticut law to the Policies in effect from October 1, 1986 to October 1, 1988.

Landis has argued that Illinois law applies to its bad faith claims. Landis contends that because Illinois is the state in which the claim arose and where the bad faith occurred, Illinois law should be applied. The court finds that Landis has waived this argument for lack of development. "Arguments not developed in any meaningful way are waived." **Cent. States, Se. & Sw. Areas Pension Fund v. Midwest Motor Express, Inc.,** 181 F.3d 799, 808 (7th Cir. 1999).

Based on the foregoing reasons, the Motion for Partial Summary Judgment on Choice of Law [DE 73] is **GRANTED**, and the Cross Motion for Partial Summary Judgment on Choice of Law [DE 122] is **DENIED.**

ENTERED this 15th day of January, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge